CARTER, Judge.
This is an appeal from an injunction in a foreclosure proceeding.
FACTS
On June 20, 1978, Lee Fortier, III and Maureen Barrow Fortier (Fortier) executed a collateral mortgage note in the amount of $60,000.00, paraphed for identification with an Act of Collateral Mortgage encumbering Lot 19, Square 17 of Roseland Terrace Subdivision (hereinafter referred to as Camelia Street property) in East Baton Rouge Parish. Fortier also executed a collateral pledge agreement pledging the collateral mortgage note to Fidelity National Bank of Baton Rouge (Fidelity) to secure the payment of a certain promissory hand-note executed by The Jock Shop, Inc., a corporation owned in part by Fortier. Through a series of renewals and extensions of the original note, Fidelity became the holder of a promissory note dated January 21, 1983, in the principal amount of $58,322.06. The note, made payable to the order of Fidelity, was executed by Fortier *399 on behalf of The Jock Shop, Inc. and was endorsed by Fortier. Bradford H. Brian executed a Continuing Guaranty in favor of Fidelity, guaranteeing payment of the debts of The Jock Shop, Inc.[1] By May of 1983, The Jock Shop, Inc. was in default on its payments on the note. On September 19, 1983, Fidelity executed an Act of Endorsement of Note and Assignment of Collateral, without recourse, assigning the promissory and collateral mortgage notes to Brian, for which he paid $57,822.37.[2]
When the collateral mortgage was placed on the Camelia Street property by Fortier, it was a second mortgage. By Act of Sale dated October 18, 1978, Fortier sold the Camelia Street home to Mr. and Mrs. William Eckman.
Prior to the closing, Nelda Edwards, an employee of the closing attorney, contacted Lynn Juban, a loan officer at Fidelity, to determine how much money was due Fidelity on the collateral mortgage. Edwards was informed that Fidelity was not owed any funds from the sale of the Camelia Street property and would release the mortgage on this property because they intended to substitute the mortgage on the Camelia Street home for a mortgage on Fortier’s new home on Menlo Drive in Baton Rouge.
The Camelia Street home was sold to the Eckmans. Following the sale, the first mortgage was cancelled. However, a written release of the second mortgage on the Camelia Street property was never obtained. This property was subsequently sold by the Eckmans to Phillip V. Gastinel.
On October 13, 1983, Brian, as holder of the promissory note and assignee of the collateral mortgage, instituted an exec-utory proceeding to foreclose on the mortgage on the Camelia Street property against The Jock Shop, Inc., Lee Fortier, III and Maureen Barrow Fortier, and Phillip V. Gastinel. An order was issued directing the sheriff to seize and sell the Camelia Street property. Gastinel filed a petition for injunction, seeking to enjoin said seizure and sale. After a hearing, the trial court granted a preliminary injunction. By judgment dated April 17, 1984, the order of seizure and sale was revoked, and a permanent injunction prohibiting the seizure and sale of the Camelia Street property was signed.
From the judgment granting the permanent injunction, Brian appeals, assigning the following specifications of error:[3]
1. The trial court erred in relying upon the doctrine of equitable estoppel to enjoin the plaintiff from enforcing the mortgage against Mr. Gastinel;
2. The trial court erred in finding that there was reliance by Mr. Gastinel on representations by Mr. Juban relative to the mortgage on the Camelia Street property; and,
3. The trial court erred in finding that Mr. Juban represented that there was no money owed on the collateral mortgage affecting the Camelia Street property at the time Mr. Eckman purchased the property from Mr. and Mrs. Fortier.
DISCUSSION
The trial judge granted the injunction in favor of Gastinel based on the doctrine of equitable estoppel.
Under LSA-C.C.P. art. 1005, estoppel is an affirmative defense which must be specially pleaded. Thieneman v. Kahn, 433 So.2d 761 (La.App. 5th Cir.1983), writ denied, 440 So.2d 731 (La.1983); Louisiana Power & Light Co. v. Mecom, 357 So.2d *400 596 (La.App. 1st Cir.1978); Central Bank v. Builders Service, Inc., 291 So.2d 530 (La.App. 3rd Cir.1974). But see G.J. Deville Lumber Company, Inc. v. Chatelain, 308 So.2d 428 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 239 (La.1975).
In the case sub judice, Gastinel did not specifically plead estoppel in his answer, nor did he raise the issue of estoppel at any stage in the proceedings. Therefore, the doctrine of estoppel is inapplicable to the instant case.
The issue remaining is whether the trial judge was correct in granting a permanent injunction prohibiting the seizure and sale of the Camelia Street property.
Under LSA-C.C. art. 2266 (now LSA-R.S. 9:2756), “all sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto.” Furthermore, LSA-R.S. 9:2721 provides:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
In the instant case, the mortgage on the Camelia Street property was filed for registry in the mortgage records in East Baton Rouge Parish. Fidelity’s release of the mortgage on the property, however, was never reduced to writing and, therefore, was not recorded. Under the public records doctrine, third persons are entitled to rely on such recorded acts and enforce the mortgage on the Camelia Street property.
The remaining question, however, is whether Brian is a third person entitled to rely on the public records or whether he is a party who is bound by all agreements not of record.
In the financial dealings with Fidelity, Brian executed a continuing guaranty in favor of Fidelity, which provided in pertinent part, as follows:
I do furthermore bind and obligate myself, my heirs and assigns, in solido with said debtor, for payment of the entire indebtedness, precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto, hereby waiving all notice including notice of such indebtedness and of demand, presentment, protest or notice of demand or non-payment and of notice of any act to establish the liability of any party on any commercial or other paper, indebtedness or obligation covered by this guaranty. (Emphasis ours)
By his continuing guaranty, Brian contracted and agreed to be bound in solido with The Jock Shop, Inc. for payment of the indebtedness as though he had contracted for the debt himself. In effect, Brian agreed to become a party to'all such notes executed on behalf of The Jock Shop, Inc. Since Brian by his own action and agreement made himself a party to the transaction, he is not a third party purchaser of the note and mortgage and cannot avail himself of the Louisiana Public Records Doctrine. Therefore, for the purposes of the public records doctrine, Brian by executing a continuing guaranty on the debt of the Jock Shop, became a party to the note and mortgage by agreement and, as such, is bound by all agreements whether or not they are recorded.
The release of the mortgage by Fidelity, though not recorded, is effective as between Fidelity, Fortier and Brian, and the trial judge, correctly granted Gastinel an injunction prohibiting Brian from seizing and selling the Camelia Street property.
*401 For the above reasons, the judgment of the trial court is affirmed. All costs are assessed against Brian.
AFFIRMED.

. Brian was also a part owner of The Jock Shop, Inc. and was Fortier’s brother-in-law.

. At the time Fidelity assigned the note without recourse to Brian, Brian was aware of the following:
(1)That he had assumed the obligation of The Jock Shop as a party;
(2) The Camelia Street property sought to be foreclosed on had long before been sold by his brother-in-law; and,
(3) That Fidelity had agreed to release the property being foreclosed on and accept a mortgage on Fortier's new home.

.Although we will not address each of Brian’s assignments of error specifically, the opinion adequately addresses all issues raised.