525 So.2d 1136 (1988)
Edmond MOUTON
v.
STATE of Louisiana, et al.
No. CA 87 0210.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
Writ Denied June 3, 1988.
*1137 T. Mike Jordan, and Paul Marx, Lafayette, for plaintiff-appellant Edmond Mouton.
Veil D. DeVillier, Eunice, for defendants-appellees State of La., et al.
Jack Allmont, New Orleans, for defendant-appellee Strata Energy, Inc.
Patrick A. Juneau, Lafayette, for defendant-appellee Kerr-McGee Corp.
Vincent P. Fornias, Baton Rouge, for defendant-appellee Quintana Petroleum Corp.
Robert Bernard, Kaplan, for defendant-appellee Kengo Services, Inc.
Charles M. Raymond, Larry Bankston, Baton Rouge, and Donald B. Ensenat, New Orleans, for defendants-appellees OBI Hughes, Inc. and Oilbase, Inc.
Robert D. Hoover, Baton Rouge, for defendants-appellees Francis Drilling Fluids, Ltd. and Toce Oil Co.
Cliffe, E. Laborde, III, Lafayette, for defendant-appellee Hilliard Oil and Gas Co., Inc.
Leonard Kilgore, III, Baton Rouge, for defendants-appellees Texaco, Inc. and Transco Exploration Co.
Russell O. Ayo, Jr., Jerome J. Barbra, III, Thibodaux, for defendant-appellee Southland Rentals, Inc.
William Logan, Jr., Lafayette, for defendant-appellee C & B Sales and Service, Inc.
James Diaz, Sr., Lafayette, for defendant-appellee WWF Oil Corp.
Stanley Babin, Lafayette, for defendant-appellee Stric-Lan Companies, Inc.
Paul E. Bullington, New Orleans, for defendants-appellees Florida Exploration, Inexco Oil Co., Patrick Petroleum, Pel-Tex Oil Co., and Toce Oil Co.
*1138 Ralph E. Kraft, Andrew H. Meyers, Lafayette, for defendant-appellee Exchange Oil and Gas Corp.
John N. Chappuis, Lafayette, for defendant-appellee Offshore Mud Movers, Inc.
William M. Wilson, Jr., New Orleans, for defendant-appellee Mobil Exploration and Producing North America, Inc.
Frank M. Coates, Jr., Baton Rouge, for defendant-appellee Halliburton Co.
Sera H. Russell, III, Lafayette, for defendant-appellee Union Oil Co. of California.
Paul Marks, Jr., Baton Rouge, for defendant-appellee Frees Const. Co., Inc.
Andre F. Toce, Lafayette, for defendant-appellee Toce Oil Co.
J. Berry St. John, Jr., New Orleans, for defendants-appellees Amoco, Conoco, Inc., Exxon, Pennzoil and Shell Oil Co.
Rick A. Mayer, Lafayette, for defendant-appellee Tenneco, Inc.
Elizabeth Hastings, Michael Mangham, Baton Rouge, for defendant-appellee General American Oil Co. of Texas.
Steven K. Best, New Orleans, for defendant-appellee Placid Oil Co.
Joseph E. LeBlanc, Jr., Eric Jarrell, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Chevron U.S.A., Inc.
Duncan M. Smith, Jr., Lafayette, for Drew Cornell, Inc.
John W. Wilson, Madison, Garrett, Brandon, Hamaker, Wilson & Tugwell, Monroe, for Sun Gas Co. Inc.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action, entitled a petition for clean up of waste site and for damages, was commenced by a landowner against a waste disposal corporation (to whom the landowner had leased his land for an oilfield waste disposal operation), the major stockholder of the disposal corporation, various waste producers[1] (who contracted with the disposal corporation to deposit wastes on the leased land and who are hereinafter referred to as the generator defendants) and the State of Louisiana[2] (State). The generator defendants filed peremptory exceptions raising the one year liberative prescription of La.C.C. arts. 3492 and 3493. After an evidentiary hearing, the trial court sustained the peremptory exceptions raising the objection of prescription and rendered a judgment dismissing the landowner's suit "as to all defendants other than Alex Abshire [the major stockholder], P.A.B. Oil and Chemical Services, Inc. [the disposal corporation] and the State *1139 of Louisiana".[3] The landowner took this devolutive appeal.

FACTS
On March 23, 1978, Edmond Mouton leased a 17.56 acre tract of land in Vermilion Parish, Louisiana, to P.A.B., Inc. (PAB) "for the purpose of sanitary landfilling and/or disposing of liquid wastes." PAB appeared in the lease through its representative, Alex Abshire. The lease provided PAB was entitled to all "revenues received from the salvage and resale of waste oil." The lease was for 99 years commencing on the date of execution and provided for rent of one-half of PAB's net profits after "all initial expenses involved in setting up Lessee's operation are paid."
On June 11, 1981, Lawrence, Ronald and Shirley Vice and Dudley Romero (hereinafter referred to as the Vice group) filed suit against PAB, Mouton and the State. The petition in this suit contained the following pertinent allegations:

II.
Plaintiffs LAWRENCE VICE and RONALD VICE are property owners of property abutting the land owned by Defendant EDMOND MOUTON and his Lessee, PAB. Plaintiffs SHIRLEY VICE and DUDLEY ROMERO own property and take their drinking water from a shallow water well in the immediate vicinity of the PAB waste pit.
....

IV.
Chemical and oil field waste from the PAB waste pit has migrated horizontally through the upper surface of the land surrounding the PAB waste pit and through overflow of the said waste pit at the southwest corner of the pit onto the land of Plaintiff, LAWRENCE VICE.

V.
Wastes from the PAB waste pit have broken through the levees and/or otherwise migrated onto the land of Plaintiff, RONALD VICE.

VI.
Wastes from the PAB waste pit may be in the early stages of contamination of Plaintiff SHIRLEY VICE and DUDLEY ROMERO's water wells by virtue of subsurface contamination, and, in addition thereto, have destroyed the value of their land for resale and/or further development.

VII.
The wastes from the PAB waste pit constitute a health hazard to human and animal life, contain hazardous and possibly toxic material, and may be in the early stages of contamination of approximately twenty-two (22) drinking water wells surrounding the waste pit.

VIII.
Plaintiffs further believe, allege and aver that their land has been rendered useless, a health hazard, unfit for human or animal habitation, unfit for normal farming practices and worthless for resale.
....

XII.
Plaintiffs believe, allege and therefore aver on behalf of themselves and other possible plaintiffs currently unnamed who may also be suffering damage at the hands of the defendants, that the use of their land has been permanently retarded or destroyed, the waste constitutes a health hazard to human and animal life and contains hazardous and possibly toxic materials, has made the land unfit for human or animal habitation, normal farming practices and resale, and *1140 has resulted in damage to them of FIFTY MILLION AND NO/100 ($50,000,000.00) DOLLARS.
At the trial of the peremptory exception raising the objection of prescription, Mouton admitted he was aware of the allegations contained in the suit filed by the Vice group and acknowledged that the filing of the suit received substantial coverage in local newspapers.
On November 11, 1981, the Vice group filed a supplemental and amended petition in their suit against Mouton, PAB and the State. Numerous generator defendants in the instant suit were made parties defendant, and the following factual allegations were made:

C.
By amending the text of Paragraph VII to read in its entirety as follows, to-wit:

VII.
The wastes from the PAB Waste Pit constitute a health hazard to human and animal life and contain hazardous and possibly toxic material, have migrated into Coulee Kinney which constitutes an illegal discharge, and may be in the early stages of contamination of approximately twenty-two (22) drinking water wells surrounding the waste pit. Specifically, samples taken by the United States Environmental Protection Agency of the run-off ditch and reserve pits of PAB OIL AND CHEMICAL SERVICES, INC. reflect the following priority pollutants and other compounds in the PAB run-off ditch and/or Plaintiffs' water wells:
Priority Pollutants:
Bis (2-Ethylshexayl) Phthalate
1,1,1-Trichloroethane,
Tetrachloroethylene
Toluene
Other Tentatively Identified Compounds:
Hexane
1-Butanal
4-(Hexyloxyl)
3(2H)-Benzofuranone,2,4-Dimethyl
1H-Indene, Octahydro-2,3A,4-Trimethyl-2-0
Quinoxaline,2-Isopropyl-,4-Oxide
DL-Leucine,N-DL-Alanyl-,Dichloroderiv.
2H-Pyran,Tetrahydro-3-Methyl
Benzamide,2-/(1,2-Dioxopropyl)Amino
2-Butanol,3,3-Dimethyl
Urea,N,N-Dimethyl
1,3-Dioxolane,2-Butyl-2-Methyl
Butane,1,1-Oxybis
Butanoicacid,3,3-Dimethyl-2-(1-Methyleth)
1,4-Naphthalenedione,E-Hydroxy
Cyclohexane,(Ethylthio)
2-Isomazolidinecarsoxylicacid,Ethylester
Chromium,Bis(Benzene)
Ethane,1,2-Dimethoxy
Hexanoicacid,2-Ethyl-,Methylester
Butanoicacid,2-Ethyl
1,3-Dioxolane,2-Butyl-2-Methyl
Hexanoicacid,2-Butyl-,Methylester
Alpha,-D-Xylofuranose,1,2-0-f(1-Methylet)
Arsenic
Chromium
Selenium
Copper
Flouride
Boron
Thallium
Methyl Napthalene
Aliphatic Hydrocarbons
Also, laboratory analyses and/or samples exceeding the Louisiana Office of Environmental Affairs' recommended levels taken by the said owner/operator of the PAB reserve waste pit water in his request for a wastewater discharge permit are as follows:
Chlorides
Chemical Oxygen Demand
Total Dissolved Solids
....

E.
By amending the text of Paragraph X in its entirety to read as follows, to-wit:

*1141 X.
The migration and/or overflow onto the land of Plaintiffs herein is in violation of Provisions 667, 668, 669, 2315 and 2316 of the Louisiana Civil Code, Statewide Order No. 29-B and amendment thereto of the State of Louisiana, Office of Conservation, Louisiana Hazardous Waste Control Law, L.R.S. 30:1131 et seq and regulations adopted thereto, Louisiana Water Control Law, L.R.S. 30:1091 et seq and regulations adopted thereto and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973 et seq, as applied to the State of Louisiana through the Louisiana Hazardous Waste Control Law.
Mouton testified at the trial of the exception that, at a point in time after the suit of the Vice group was filed, PAB stopped doing business on the property and the State locked the gate to the premises. The Environmental Protection Agency went to the site in 1983, and the gate was locked at that time.
This suit was filed on June 12, 1985.

COMMENCEMENT OF PRESCRIPTIVE PERIOD

(Assignment of Error 1)
Mouton contends the trial court erred in finding the prescriptive period herein commenced to accrue from the date the Vice group originally filed suit for damages. Mouton asserts the operative cause of the damage to his property is the presence of the substances on the property, the presence of the toxic and hazardous wastes on his property constitutes a continuous delict (tort) and, thus, prescription does not commence to run until these substances are removed from the property.
The objection of prescription raised in a peremptory exception may assert any of the defenses set forth in Title XXIVPrescription of the Civil Code. Capital Drilling Company v. Graves, 496 So.2d 487 (La.App. 1st Cir.1986). One of these defenses is liberative prescription which is defined as a mode of barring an action as a result of inaction for a period of time. The generator defendants have raised the liberative prescription of one year found in La. C.C. arts. 3492 and 3493, which provide as follows:
Art. 3492. Delictual actions
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
Art. 3493. Damage to immovable property; commencement and accrual of prescription
When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.
Comments (b) and (c) for La.C.C. art. 3493 provide as follows:
(b) When damage is caused to immovable property, the one year prescription that is applicable to a delictual action commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. Dean v. Hercules, Inc., 328 So.2d 69 (La.1976).
(c) Louisiana decisions draw a distinction between damages caused by continuous, and those caused by discontinuous, operating causes. When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. See South Central Bell Telephone Co. v. Texaco, 418 So.2d 531 (La.1982), and cases cited therein. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage. See A.N. Yiannopoulos, Predial Servitudes, § 63 (1982).
The trial court gave the following reasons for sustaining the exception:

*1142 There is little question but that plaintiff "acquired, or should have acquired, knowledge of the damage" here at issue when he was made a defendant in a lawsuit by neighboring land owners, Lawrence Vice, et al v. P.A.B. Oil and Chemical Services, et al, Number 81-46063-H, 15th Judicial District Court, Parish of Vermilion, filed on July 11, 1981. Thus, the prescription issue is not based upon a lack of knowledge, but rather on plaintiff's claim of "continuing damages".
....
In this case, it is undisputed that "generator" dumping ceased well beyond the one year prescriptive period. Plaintiff's argument that somehow the "conduct" here is the presence of hazardous waste on plaintiff's property is without merit. This Court finds that the "conduct" of "generator" defendants was the deposit of oil field wastes on plaintiff's land. Since this conduct had entirely ceased more than one year before plaintiff filed this suit, plaintiff's suit against "generator" defendants is prescribed. Therefore, this Court sustains "generator" defendants' exception of prescription.
We agree with this analysis. Cf. Boudreaux v. Terrebonne Parish Police Jury, 422 So.2d 1209 (La.App. 1st Cir.1982).
This assignment of error is without merit.

CAUSE OF ACTION AND PRESCRIPTION FOR UNJUST ENRICHMENT

(Assignment of Error 2)
In this assignment of error, Mouton asserts the following:
The district court erred in finding the allegations of fraud in the lawsuit insufficient to negate the exception of prescription by establishing a cause of action in unjust enrichment.
Mouton asserts the conduct of the generator defendants constituted civil fraud,[4] the "allegations of fraud in the Plaintiff's petition amount to statement of a cause of action and unjust enrichment", and the trial court "should have considered the allegations of the pleadings and deferred ruling or judgment on the exception or [sic] prescription until it could be defined whether in fact, unjust enrichment could be proven." Implicit in this argument is that a claim of unjust enrichment is subject to the ten year prescriptive period of La.C.C. art. 3499. Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743 (La.App. 1st Cir.1977).
The five requirements necessary to state a cause of action for unjust enrichment (actio de in rem verso) are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983).
Unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided. In Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116, 122 (La.1974), appears the following:
Civil Code Article 21 expressly states that the judge can turn to equity (actio de in rem verso) only where there is no express law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not "perpetrate a fraud on the law."
Mouton's cause of action against the generator defendants is a tort action under La.C. C. art. 2315. Comment (b) under La.C.C. art. 3492 provides as follows:

The one year prescription applies to all delictual actions. Article 3536(1) of the Louisiana Civil Code of 1870 speaks of liability caused by libellous statements, animals, and offenses and quasi-offenses. These are merely examples of *1143 delictual actions. This Article expresses the principle embodied in Article 3536(1) of the 1870 Code. The notion of delictual liability includes: intentional misconduct, negligence, abuse of right, and liability without negligence. [Emphasis added.]
Because Mouton has a delictual cause of action under La.C.C. art. 2315, he is precluded from having an equitable remedy for unjust enrichment under La.C.C. art. 21.[5]Mayor and Council of City of Morgan City v. Jesse J. Fontenot, Inc., 460 So.2d 685 (La.App. 1st Cir.1984). La.C.C. art. 3499, by its own terms, is not applicable unless there is no other controlling law.
This assignment of error is without merit.

CLEANUP CAUSE OF ACTION

(Assignment of Error 3)
In this assignment of error, Mouton asserts that the "district court erred in finding a suit for cleanup of a chemical dump was a claim for `damages.'" Mouton asserts "the claim for cleanup or removal of the waste is a separate one from claims for damages for lost use and other causes of actions and that the cleanup prayer of the petition is a separate cause of action arising out of a separate body of law and not subject to the prescription of the damaged [sic] articles." It is also implicit in this argument that this claim is subject to a prescriptive period other than that of La.C.C. arts. 3492 and 3493.
This argument assumes that a demand for cleanup or removal of the waste is a cause of action. It is not. The cost of cleanup or removal of offending substances is an element of damages and, thus, part of the relief that may be obtained if the cause of action is proved.
The general law applicable for determining the quantum of damages to property is set forth in Carter v. Gulf States Utilities Company, 454 So.2d 817, 819-820 (La.App. 1st Cir.1984), as follows:
In determining damages, the trier of fact is accorded much discretion, especially where the facts of the case preclude a precise computation of damages.... No mechanical rule of determining damages is to be applied; the quantum in each case must be determined considering the facts and circumstances of that case.... Although trial judges are granted great discretion in determining damage awards, these awards must be made in accordance with law.... The proper goal of a damage award is to restore the plaintiff, as closely as possible, to the position which he would have occupied had the accident never occurred....
Generally, three approaches have been followed by the Louisiana courts in arriving at the amount of damages to property; (1) the cost of restoration if the thing damaged can be adequately repaired; (2) the difference in value prior to and following the damage; or (3) the cost of replacement new, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined, or if the cost of the repairs exceeds the value of the thing damaged.
Where land has been rendered useless, the proper measure of damages is the lesser of either the market value of the property and severance damages minus any residual value or the cost of restoration of the property to its condition prior to the damage. Matherne v. Terrebonne Parish Police Jury, 462 So.2d 274 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1321 (La. 1985). If the land has been rendered useless and the cost of restoration exceeds the value of the land (and no residual value has been proven), the owner of the damaged land is entitled to recover only the market value of the land in damages. Matherne, 462 So.2d at 280-281; Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979). No authority has been cited to us, and we have found none, which creates the cause of action asserted in this assignment of error.
*1144 This assignment of error is without merit.

MOTION BY THE STATE
Prior to the date of oral argument in this case, the State filed a motion with us entitled "MOTION FOR CLARIFICATION OF RECORD AND RECOGNITION OF JUDGMENT". This motion asserts, and the record reveals, the following facts:
(1) on November 14, 1986, the State filed a peremptory exception raising the objection of prescription;
(2) on November 20, 1986, Mouton obtained the "general" order of appeal from the judgments in favor of the generator defendants;
(3) on January 16, 1987, a hearing was scheduled on the State's exception;
(4) on January 27, 1987, judgment was rendered in favor of the State sustaining the peremptory exception; and
(5) the record before us contains no appeal from the State's judgment.
The State prays that this court recognize that the delays for appealing the State's favorable judgment have expired, declare that the State is not a party to this appeal, and dismiss the State from this appeal.
Because the record before us contains no appeal from the judgment in favor of the State, the State is not a party to this appeal. Since the State is not a party to this appeal, this court has no appellate jurisdiction to take any action on the judgment which sustained the peremptory exception in favor of the State against Mouton.

DECREE
For the foregoing reasons, the judgments of the trial court sustaining the peremptory exceptions of the generator defendants which raised the objection of prescription are affirmed. Mouton is cast for the cost of this appeal.
AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
The majority, in my opinion, affirms a clearly erroneous ruling of the trial court which held that since the conduct of the generator defendants had ceased more than a year before the plaintiff filed his suit, it had prescribed, as per LSA-C.C. arts. 3492 and 3493. I would reverse. The facts of this case are similar to those presented in South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531 (La. 1982), where the Supreme Court said:
When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated. The damage did not end merely because South Central Bell decided that all of its cables would eventually have to be replaced. Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.
Here, plaintiff has alleged that toxic waste spilling onto his property has continuously damaged him. Cessation will occur only after the toxic waste is removed from the property.
I respectfully dissent.
NOTES
[1] The defendants referred to as the generator defendants are Don F. Levy, Inc.; National Supply, Inc.; Apache Marine Cleaning & Coating, Inc.; Wagner & Brown; Prees Construction, Inc.; Gulf Coast Vacuum Services, Inc.; Kengo Service, Inc.; Offshore Mud Movers, Inc.; Cotton Petroleum Company; Texaco, Inc.; Jones-O'Brien, Inc.; Delta Construction Company, Inc.; W.W.F. Oil Corporation; Sonat Exploration Company; United Gas Corporation; Jones Exploration Company; C & B Sales & Service, Inc.; Imco Design, Inc.; Louisiana Explorations, Inc.; Southland Rentals, Inc.; Southwest Oil Salvage, Inc.; Briley Marine, Inc.; Francis Drilling Fluids, Ltd.; Drew Cornell, Inc.; Toce Oil Company, Inc.; Stric-Lan Companies, Inc.; Pennzoil Company; Transco Exploration Company; Kerr-McGee Corporation; Hilliard Oil & Gas, Inc.; McCormick Oil & Gas Company [now Graham McCormick Operating Partnership]; Exchange Oil & Gas Corporation; Tenneco, Inc.; Amoco Production Company; Shell Oil Company; Strata Energy, Inc.; Federated Energy Corporation; Pepper Industries, Inc.; Patrick Petroleum Company; Cudd Pressure Control, Inc.; Superior Oil Company [now Mobil Exploration and Producing North America, Inc.]; Goldrus Drilling Company; OBI-Hughes, Inc.; Union Oil Company of California; Placid Oil Company; Gulf Oil Corporation [now Chevron U.S.A., Inc.]; General American Oil Company of Texas; Conoco, Inc.; Florida Exploration Company; Oil Base, Inc.; Pel-Tex Oil Company, Inc.; Quintana Petroleum Corporation; Inexco Oil Company; Halliburton Services; Exxon, USA; and Sun Gas Company, Inc.

Offshore Mud Movers, Inc. and Kengo Services, Inc. were dismissed by the trial court through judgments sustaining peremptory exceptions urging no right of action. Plaintiff did not appeal these judgments.
[2] The State appeared through the Office of Conservation of the Department of Natural Resources.
[3] There were also numerous other individual judgments rendered in favor of specific generator defendants.
[4] An action for fraud may be brought as a breach of contract or a tort. Haggerty v. March, 480 So.2d 1064 (La.App. 5th Cir.1985). The claim against the generator defendants is not contractual because they were not parties to the lease agreement. Further, no fraud was proven at the trial of the exception.
[5] La.C.C. art. 21 has been reenacted as La.C.C. art. 4 by Acts 1987, No. 124.