577 So.2d 1099 (1991)
LOUISIANA NATIONAL BANK OF BATON ROUGE
v.
Guy M. BELELLO and Ginger Sutton Belello.
No. 89 CA 2140.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Charles A. Landry, Robert W. Scheffy, Jr., Baton Rouge, for Louisiana Nat. Bank of Baton Rouge.
*1100 Errol King, Jr., Baton Rouge, for Premier Bank.
William H. Patrick, III, Baton Rouge, La., for Guy M. Belello.
Bobby L. Forrest, Victor A. Sachse, III, John E. Heinrich, Baton Rouge, for Federal Sav. and Loan Ins. F.S.B. as Receiver for Sun Belt Federal Bank F.S.B. and Mid South Title Ins. Corp.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit involving various promissory notes and mortgages.

FACTS
On May 4, 1983, the defendants, Guy M. and Ginger Sutton Belello, executed a mortgage on certain property, hereinafter called the Trafton property, to secure a note in favor of United Financial Corporation (United) in the principal sum of $416,189.26. On October 31, 1983, defendants executed a collateral mortgage in the amount of $300,000.00 in favor of Louisiana National Bank (LNB). This mortgage was also on the Trafton property and, at the time, was the second mortgage, ranking behind the United mortgage. On December 16, 1983, defendants executed another collateral mortgage for $750,000.00 on the Trafton property in favor of Sun Belt Federal Bank, F.S.B. (Sun Belt). A portion of the loan proceeds derived from the execution of this third mortgage was utilized to fully satisfy the pre-existing first mortgage in favor of United.
George P. Bevan was the closing attorney in the transaction between defendants and Sun Belt and issued a certificate of title examination, which showed that, on November 2, 1983, United was the first mortgage holder and that LNB was in the position of second mortgage holder. Pursuant to this examination, Mid-South Title Insurance Corporation (Mid-South) issued a title insurance policy on the transaction. Although it was alleged that a subordination agreement was to have been prepared to subordinate LNB's mortgage, which was now in the position of the first mortgage holder, to Sun Belt's new mortgage, a written subordination agreement was not obtained from LNB prior or subsequent to the execution of the Sun Belt mortgage.
On March 30, 1988, LNB[1] filed a petition for executory process against defendants seeking to enforce its mortgage on the Trafton property. Shortly thereafter, Federal Savings & Loan Insurance Corporation (FSLIC)[2] and Mid-South filed a petition of intervention asserting that Sun Belt's mortgage was superior to that of LNB and that, as such, its judgment for the principal sum of $604,191.75 plus interest, late charges, and attorney's fees should be paid first out of the proceeds from the sale of the Trafton property.
After trial, the trial judge, for written reasons assigned, found that Brian v. The Jock Shop, Inc., 479 So.2d 398, 400 (La. App. 1st Cir.1985), writ denied, 481 So.2d 1349 (La.1986), held that a subordination agreement was not required to be in writing. The trial judge also determined that FSLIC and Mid-South failed to establish the existence of a verbal subordination agreement and that, as such, the Sun Belt mortgage, dated December 16, 1983, was inferior to the mortgage in favor of LNB. Accordingly, the trial judge rendered judgment in favor of LNB and against FSLIC and Mid-South.
From this adverse judgment, FSLIC and Mid-South appeal assigning the following errors:
I. The court committed manifest error in not finding that the intervenors proved an agreement by Louisiana National Bank to subordinate its mortgage to the intervenors' mortgage.
II. The court erred in not considering intervenors' plea in equity based upon *1101 plaintiff's fortuitous and unjust enrichment.
LNB answered this appeal requesting damages for frivolous appeal. LNB subsequently amended its answer to the appeal requesting reversal or modification of the trial court finding that a subordination agreement does not have to be in writing. LNB reasons that Brian v. The Jock Shop, Inc., 479 So.2d at 400, stands for the proposition that, as between the parties, a subordination agreement does not have to be in writing, but that to affect third parties, a written instrument is required.

SUBORDINATION AGREEMENT
FSLIC and Mid-South contend that the trial court erred in finding that they failed to prove the existence of a verbal subordination agreement. FSLIC and Mid-South reason that the testimony of the witnesses shows that a verbal agreement was made by LNB to subordinate its mortgage to that of Sun Belt and that, subsequent to that agreement, LNB refused to enter into a written subordination agreement.
In the instant case, it is undisputed that no written subordination agreement was executed. However, FSLIC and Mid-South sought to establish the existence of a verbal subordination agreement through the testimony and documentary evidence.
Omer Davis, senior vice-president of LNB, testified that, prior to receiving Bevan's title examination certificate in 1984, he thought LNB was the second mortgage holder of the Trafton property behind United. When Bevan contacted him in 1988 regarding an "oversight" with the subordination of LNB's mortgage to that of Sun Belt, Davis informed him that LNB was already in foreclosure on the Trafton property. Davis testified that neither Guy nor Ginger Belello had ever requested LNB to subordinate its mortgage to that of Sun Belt and that he never agreed with anyone to make such a subordination.
Linda M. Greer, real estate secretary to Bevan, testified that prior to the closing Belello informed her that LNB would subordinate their mortgage in favor of Sun Belt, but that she did not confirm this with LNB prior to the closing on the Sun Belt mortgage. However, subsequent to the closing, Greer placed a telephone call to Omer Davis of LNB to arrange an appointment to execute the subordination agreement. According to Greer, although Davis recalled discussing subordination with Belello, he refused to sign a subordination agreement.
The closing attorney also testified. Bevan testified that, several years after the closing was held, he spoke with Davis, who informed him that, although a subordination had been agreed upon, "things had changed and he was not in a position" to subordinate. On cross-examination, Bevan explained that Davis had acknowledged that, although the LNB mortgage might have been meant to be subordinated, it was not subordinated and would not now be subordinated.
According to Belello's deposition testimony, he recalled speaking with Davis at LNB about subordination and that he relayed this information to Greer. Belello denied telling Greer that he and Davis had reached an agreement, but that he assumed the attorneys would work out a subordination agreement. Belello assumed there had been a subordination because, given the size of the Sun Belt loan, he anticipated that Sun Belt would have wanted the position of first mortgage holder.
The trial court determined that, based upon the evidence, FSLIC and Mid-South failed to carry their burden of proving the existence of a verbal subordination agreement. The Louisiana Supreme Court in Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990), reiterated the standard of review this court must follow:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel *1102 that its own evaluations and inferences are as reasonable.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding and belief in what is said. (Citations omitted).
After carefully reviewing the documentary and testimonial evidence presented at the trial of this matter, we find that the trial court did not err in its finding that FSLIC and Mid-South failed to establish the existence of a verbal subordination agreement.
The trial court also determined that the subordination agreement was not required to be in writing citing this court's opinion in Brian v. The Jock Shop, Inc., 479 So.2d at 400. Because of our determination that the trial court did not err in finding that FSLIC and Mid-South failed to establish the existence of any subordination agreement, we find it unnecessary to address the trial court's interpretation of Brian v. The Jock Shop, Inc., 479 So.2d at 400.[3]

UNJUST ENRICHMENT
FSLIC and Mid-South alternatively contend that the trial court erred in not granting them relief under the theory of unjust enrichment.
The five requirements necessary to state a cause of action for unjust enrichment (actio de in rem verso) are:
(1) an enrichment;
(2) an impoverishment;
(3) a connection between the enrichment and the impoverishment;
(4) an absence of justification or cause for the enrichment and the impoverishment; and
(5) no other remedy at law available to plaintiff.
Creely v. Leisure Living, Inc., 437 So.2d 816, 821-22 (La.1983); Mouton v. State, 525 So.2d 1136, 1142 (La.App. 1st Cir.), writ denied, 526 So.2d 1112 (La.1988). To recover under the doctrine of unjust enrichment, a claimant must prove all five elements; if any one is not proven, the claimant's recovery is barred. Bernard v. First Republic Life Insurance Company, 510 So.2d 97, 102 (La.App. 1st Cir.1987).
Unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided. Mouton v. State, 525 So.2d at 1142. In Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116, 122 (La.1974), the court stated:
Civil Code Article 21 expressly states that the judge can turn to equity (actio de in rem verso) only where there is no express law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not "perpetrate a fraud on the law." (citation omitted).
In the instant case, the requisites for the doctrine of unjust enrichment are not present. At the time Belello borrowed money from Sun Belt and executed a $750,000.00 collateral mortgage in favor of Sun Belt, United was the first mortgage holder and LNB was the second mortgage holder. Thereafter, when the first mortgage was fully satisfied and cancelled, LNB's collateral mortgage became the first mortgage. Sun Belt's failure to secure a subordination agreement, subordinating LNB's previously executed collateral mortgage to its new collateral mortgage, prior to the funding of the loan to Belello was the cause or justification for any alleged enrichment or impoverishment which may have resulted.[4] Accordingly, we find that Sun Belt's recovery *1103 under the doctrine of unjust enrichment is barred by its failure to establish all five of the requisite elements.

FRIVOLOUS APPEAL
Damages for frivolous appeal are authorized by LSA-C.C.P. art. 2164. Fouchi v. Fouchi, 442 So.2d 506, 514 (La.App. 5th Cir.1983), writ denied, 445 So.2d 1235 (La.1984); Weatherall v. Department of Health and Human Resources, 432 So.2d 988, 997 (La.App. 1st Cir.), writ denied, 437 So.2d 1150 (La.1983). However, the provisions of this article are penal in nature and must be strictly construed. Appeals are favored and damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Fouchi v. Fouchi, 442 So.2d at 514; Weatherall v. Department of Health and Human Resources, 432 So.2d at 997.
In the instant case, even though we have determined that the issues presented lack merit, we are not convinced that the appeal falls into either of the two aforementioned categories. Therefore, we reject the demand for damages for frivolous appeal.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of LNB and against FSLIC and Mid-South finding that the LNB collateral mortgage was superior to the subsequent collateral mortgage of Sun Belt and denying their intervention is affirmed. Additionally, LNB's request for damages for frivolous appeal and other relief is denied. Costs are assessed equally against FSLIC, Mid-South, and LNB.
AFFIRMED.
NOTES
[1] Subsequently, Premier Bank, N.A., f/d/b/a LNB continued the proceedings instituted by LNB.
[2] Pursuant to a resolution of the Federal Home Loan Bank Board, dated May 1, 1986, FSLIC was appointed as receiver for Sun Belt.
[3] This court does not agree with the liberal interpretation given our prior opinion, but specifically does not address this issue. A discussion of this issue is not critical to the instant case in that, assuming arguendo that one may enforce a verbal subordination agreement, the parties herein failed to establish the existence of such an agreement. This court does not render advisory opinions and specifically declines to do so herein.
[4] We specifically do not address whether any of the other elements were met, nor is our finding a comment on the pending litigation between FSLIC and Mid-South and Bevan.