633 So.2d 918 (1994)
Roger PENTON and Patricia Penton
v.
Ashley CLARKSON.
No. 93 CA 0657.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
*920 Ronald L. Causey, Baton Rouge, for plaintiff-appellant Roger Penton and Patricia Penton.
Daniel K. Rester, Baton Rouge, for defendant-appellee Ashley Clarkson.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting the defendant's motion for summary judgment.

FACTS
On February 5, 1991, nineteen-year-old Jeffrey Paul Penton was sharing an apartment with Ashley Clarkson, whom he had been dating for approximately two years. On the evening of February 5, 1991, Jeffrey and Ashley got into an argument which lasted several hours. At approximately 11:30 p.m., Jeffrey was injured by a self-inflicted gunshot wound to the head. He died several hours later on February 6, 1991, as a result of that injury.
On January 29, 1992, Roger Penton and his former wife, Patricia Penton, filed this action for the wrongful death of their son Jeffrey. Ashley Clarkson was named as defendant in the action. The petition alleged that Clarkson had known Jeffrey for several years, knew and understood his emotional propensities, and recognized his state of mind on the evening of February 5, 1991, but that she failed to take any affirmative action to prevent Jeffrey's death. The petition alleged that Ashley was responsible for Jeffrey's death for the following reasons:
a. She engaged in loud, boisterous and provocative arguments with the deceased for several hours on the evening of February 5, 1991, causing him serious emotional conflict and turmoil;
b. She failed to call or summon help or assistance from family members, friends or professional personnel when the deceased threatened to kill himself;
c. She failed to remove or hide the deceased's hand gun after she realized that he was emotionally distraught and possibly a danger to himself, though she had sufficient opportunities to do so;

*921 d. Other acts and omissions of negligence which will be shown at trial.
On April 29, 1992, Clarkson filed a motion for summary judgment, alleging that there was no genuine issue of material fact in dispute and that she was entitled to judgment as a matter of law. In support of the motion for summary judgment, Clarkson attached her affidavit along with the affidavits of Madelaine Monroe and Robert Messick (two of Jeffrey's personal friends) and Wayne Cupit, a captain in the Baton Rouge Police Department. In the motion for summary judgment, Clarkson requested penalties and attorney's fees under LSA-C.C.P. art. 863.
On June 30, 1992, Clarkson filed a motion for leave of court to file a supplemental memorandum in support of her motion for summary judgment. By order dated July 1, 1992, the trial court granted Clarkson leave to file the supplemental memorandum. Attached to the memorandum were the affidavits of Doug Moreau, District Attorney for the Parish of East Baton Rouge, and Greg Phares, Chief of Police for the City of Baton Rouge.
On July 22, 1992, plaintiffs amended their petition, alleging that, because of Clarkson's close personal relationship with Jeffrey, there was a legal duty imposed upon her to take action to prevent injury to Jeffrey or to prevent his self-inflicted death. The petition further alleged that Clarkson breached that duty and is, therefore, responsible for Jeffrey's death.
On July 30, 1992, plaintiffs filed an opposition to the motion for summary judgment. Attached to the opposing memorandum were affidavits of the following persons: Judith Jordan, Jeffrey's and Ashley's neighbor; Roger Penton, Jeffrey's father; Tammy Hooks, Jeffrey's step-sister; Heather Bourque, Jeffrey's personal friend; Patricia Penton, Jeffrey's mother; and Ronald Causey, attorney for plaintiffs.
On July 31, 1992, the trial court granted Clarkson's motion for summary judgment, but denied her claim for attorney's fees and costs under LSA-C.C.P. art. 863. The judgment was signed on September 2, 1992. Plaintiffs appealed from that adverse judgment, assigning the following issues for our review:
1. Considering the unique and special relationship between Ashley Clarkson and Jeffrey Paul Penton, and considering the events and conduct of Ashley Clarkson leading up to Jeffrey Paul Penton's injury, did she have a duty to do whatever she could and to take whatever action possible to prevent injury or self-inflicted death to Jeffrey Paul Penton?
2. By her acts and omissions, did Ashley Clarkson breach that duty?
3. Was the breach of that duty by Ashley Clarkson a contributing cause to the gunshot injury sustained by Jeffrey Paul Penton and his death shortly thereafter?
Clarkson answered the appeal, alleging that the trial court erred in denying her costs and attorney's fees. Clarkson also contends that she is entitled to damages for frivolous appeal.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. 1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal *922 dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136-37 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover. Penalber v. Blount, 550 So.2d at 583; Hollis v. City of Baton Rouge/Parish of East Baton Rouge, 593 So.2d 388, 389 (La.App. 1st Cir.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

DUTY
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in LSA-C.C. articles 2315 and 2316. LSA-C.C. art. 2315 provides, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." A person is also responsible for the damages he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill. LSA-C.C. art. 2316.
The elements of a cause of action under LSA-C.C. arts. 2315 and 2316 are fault, causation, and damage. Oswald v. Rapides Iberia Management Enterprises, Inc., 452 So.2d 1258, 1262 (La.App. 2nd Cir.), writ denied, 457 So.2d 14 (La.1984). Prerequisites to a determination of fault are the existence of a legal duty coupled with a breach of that duty. Seals v. Morris, 410 So.2d 715, 718 (La.1982) (on rehearing). The legal duty is the obligation to conform to the standard of conduct of a reasonable person under like circumstances. United States Fidelity & Guaranty Company v. Hi-Tower Concrete Pumping Service, Inc., 574 So.2d 424, 434 (La.App. 2nd Cir.), writs denied, 578 So.2d 136, 137 (La.1991); Oswald v. Rapides Iberia Management Enterprises, Inc., 452 So.2d at 1262. Whether or not a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. White v. State, Department of Public Safety and Corrections, *923 Office of Motor Vehicles, 569 So.2d 1001, 1003 (La.App. 1st Cir.1990).
Therefore, the issue presented in the instant case is whether Clarkson had a legal duty to take action to prevent Jeffrey from injuring himself or committing suicide. Plaintiffs argue that, because of Clarkson's relationship with Jeffrey, she had a legal duty to take affirmative action to prevent injury to him and to prevent his self-inflicted death. However, we find no merit to this argument.
The duty to render aid was discussed in Strickland v. Ambassador Insurance Company, 422 So.2d 1207, 1209 (La.App. 1st Cir. 1982), where the court stated as follows:
It is widely recognized in the field of tort law that the courts do not impose a general duty to come to the aid of one who is in peril, that is, one will not be held legally liable for his inaction even though his assistance could have saved the injured party. There are, however, certain well-delineated circumstances under which a duty is imposed.
There is a legally recognized duty to render assistance in situations where the plaintiff's peril or injury is due to negligence on the part of the defendant or in situations where one begins rescue and thereby discourages others from aiding the injured party....
The courts will also find a duty to aid where there is a special relation between the parties. For example, the courts have found that the following relationships give rise to a duty: carrier and passenger; innkeeper and guest; shopkeeper and business visitor; jailor and prisoner; and school and pupil. W.L. Prosser, The Law of Torts, 340-343 (4th Ed.1971). See also 12 F.F. Stone, Louisiana Civil Law Treatise: Tort Doctrine, 415-416 (1977).
See Evans v. Hawley, 559 So.2d 500, 505-06 (La.App. 2nd Cir.), writ denied, 563 So.2d 1156 (La.1990). Jurisprudence also indicates that there is a duty to protect another from self-inflicted harm in the following relationships: prison/inmate;[1] hospital/patient;[2] doctor/patient;[3] pharmacist/mentally incompetent patient.[4]
In the instant case, however, we find that Clarkson did not have a duty to prevent Jeffrey from injuring himself or from committing suicide. First, the undisputed facts show that Jeffrey's injury and resulting death were caused by a self-inflicted gunshot wound and were not the fault of Clarkson. She acted as any reasonably prudent person in her position would have acted in a similar situation. Clarkson's affidavit reveals that Jeffrey had either threatened to commit or attempted to commit suicide on numerous *924 prior occasions.[5] She indicated that, on the evening of February 5, 1991, Jeffrey threatened her with physical violence and held a gun while threatening to take his own life. Clarkson feared that Jeffrey might shoot her with the gun, which he continually raised and lowered to his own head.
Second, Clarkson's relationship with Jeffrey is not the type of relationship where a duty to aid has traditionally been imposed. Therefore, we conclude that Clarkson had no legal duty to take action to prevent Jeffrey's self-inflicted injury and resulting death. Because we find Clarkson had no duty, the trial court did not err in granting Clarkson's motion for summary judgment.

CLARKSON'S CONTENTIONS
In her answer to the appeal, Clarkson contends that the trial court erred in denying her costs and attorney's fees under LSA-C.C.P. art. 863. Clarkson further contends that she is entitled to damages for frivolous appeal.
LSA-C.C.P. art. 863 provides, in pertinent part, as follows:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Thus, the obligation imposed upon litigants and their counsel who sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506, 509-510 (La.App. 4th Cir.1991).
Among the factors to be considered in determining whether reasonable factual inquiry has been made are:
1) The time available to the signer for investigation;
2) The extent of the attorney's reliance on his client for the factual support for the document;
3) The feasibility of a prefiling investigation;
4) Whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
5) The complexity of the factual and legal issues; and
6) The extent to which development of the factual circumstances underlying the claim requires discovery.
Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510.
The factors for determining whether reasonable legal inquiry was made include:
1) The time available to the attorney to prepare the document;
2) The plausibility of the legal view contained in the document;
3) The pro se status of the litigant; and
4) The complexity of the legal and factual issues raised.
Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510.
LSA-C.C.P. art. 863 is not to be used simply because parties disagree as to the correct resolution of a matter in litigation. Loyola v. A Touch of Class Transportation *925 Service, Inc., 580 So.2d at 510. Advocating new or novel legal theories does not trigger a sanction award under article 863. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510. Responsible, albeit adventuresome, lawyers must not be sanctioned in those circumstances, especially when they advise the court of existing law and their considered decision to seek its modification or reversal. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510. Article 863 seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510, quoting Gaiardo v. Ethyl Corporation, 835 F.2d 479 (3rd Cir. 1987).
There is a two-tiered standard of review when examining a sanctions award. The factual finding of the trial court that LSA-C.C.P. art. 863 was, or was not, violated is reviewed on appeal under the "manifest error" or "clearly wrong" standard. However, once the trial court finds a violation of article 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of discretion" standard. Succession of Thomas, 602 So.2d 1108, 1110 (La. App. 1st Cir.1992). In the instant case, the trial court found that LSA-C.C.P. art. 863 had not been violated. Therefore, the "manifest error" or "clearly wrong" standard is the appropriate standard of review.
After thoroughly reviewing the pleadings filed in the instant case and considering the factors set forth above, we are convinced that the trial court was not manifestly erroneous in denying Clarkson's request for costs and attorney's fees. Therefore, the assignment of error is without merit.
LSA-C.C.P. art. 2164 provides for damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Prieto v. St. Tammany Homesites, Inc., 602 So.2d 1111, 1116 (La.App. 1st Cir.1992); Pension Investment Corporation of America v. East Baton Rouge Parish School Board, 583 So.2d 598, 602 (La.App. 1st Cir.1991); Louisiana National Bank of Baton Rouge v. Belello, 577 So.2d 1099, 1103 (La.App. 1st Cir.1991). Appeals are favored, and damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that the appealing counsel does not seriously believe in the position he advocates. Prieto v. St. Tammany Homesites, Inc., 602 So.2d at 1116; Louisiana National Bank of Baton Rouge v. Belello, 577 So.2d at 1103.
In the instant case, after a careful review of the entire record, we cannot say that damages for frivolous appeal are warranted. While we do not find merit in appellant's allegations and have determined that appellant is not entitled to relief, we cannot say that this appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates.

CONCLUSION
For the reasons set forth above, the judgment of the trial court, granting Clarkson's motion for summary judgment and denying her claim for costs and attorney's fees, is affirmed. Costs of this appeal are equally assessed between plaintiffs and Clarkson.
AFFIRMED.
NOTES
[1] In Scott v. State, 618 So.2d 1053 (La.App. 1st Cir.), writ denied, 620 So.2d 881 (La.1993), the court found that prison authorities owe a duty to use reasonable care to protect inmates from harm and that this duty extends to protecting inmates from self-inflicted injury. The court, however, stated that the duty is not absolute, but depends upon the circumstances of the particular case.
[2] In Palermo v. NME Hospitals, Inc., 558 So.2d 1342, 1345 (La.App. 4th Cir.1990), the court stated that a hospital has a duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. The court determined that the hospital did not breach its duty to a patient who committed suicide by jumping from her fourth floor room in the hospital.

In Broussard v. State, Division of Hospitals, 356 So.2d 94, 95 (La.App. 1st Cir.), writ denied, 358 So.2d 639 (La.1978), the court stated that a hospital owes a patient the duty of reasonable care and determined that the hospital exercised reasonable care to prevent the suicide of a suicidal mental patient.
[3] In Argus v. Scheppegrell, 472 So.2d 573, 577 (La.1985), a patient overdosed on prescription drugs. The court indicated that the patient's doctor could only fulfill his duty by not giving her further prescription drugs when he was aware of the patient's addiction. Because the doctor's giving her prescriptions for additional drugs in increased amounts caused her death, the patient's parents were entitled to recover for her wrongful death.
[4] In Trumbaturi v. Katz & Besthoff, Limited, 180 La. 915, 158 So. 16, 19 (1934), the court found that a pharmacist breached a duty owed to a mentally incompetent patient to inquire as to the purpose for which the poisonous drug being ordered via telephone was wanted. The court noted that a pharmacist is "undoubtedly held to a special degree of responsibility, for the erroneous use of poisons, corresponding with his superior knowledge of the business."
[5] The affidavits of Madelaine Moore and Robert Messick also indicate that Jeffrey had previously threatened to commit or attempted to commit suicide.