GAIDRY, J.
 

 LA landowner upon whose property two railroad spur tracks were situated appeals a judgment sustaining peremptory exceptions of prescription, dismissing its claims against a railroad company and the alleged successor to a steel salvage business for wrongful removal of the railroad spur tracks. For the following reasons, we affirm the judgment of the trial court.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 The plaintiff, Gallant Investments, Ltd. (Gallant), is the owner of immovable property located in Baton Rouge, Louisiana. It purchased the commercial property, including a warehouse, in 1985 for the total sum of $1,050,000.00. At the time of the purchase, two parallel railroad tracks ran behind and in close proximity to the warehouse.
 

 On November 15, 1965, Illinois Central and the prior owners of the property entered into a written agreement pertaining to the ownership, maintenance, and use of railroad spur tracks connecting with tracks owned by Illinois Central. Under the terms of that agreement, Illinois Central agreed to construct a portion of spur tracks, connecting with Illinois Central’s tracks, on the property. Illinois Central was recognized as the owner of a certain section of the tracks on the property, including a switch and turnout tracks connecting a section of its tracks with the spur tracks. The prior owners were recognized as owning the remaining sections. The agreement also contained the following provision:
 

 The Railroad Company shall have the right at any time to remove
 
 that poytion of the Track oivned, by it
 
 upon giving to the [owners] written notice of the Railroad Company’s intention to remove the same thirty (30) days before such removal shall be commenced. (Emphasis supplied.)
 

 | Jt was further provided that the agreement would “run with the land upon which the Track is located,” and was to be binding on the parties’ successors and assigns.
 

 Mr. Valdean Watts was employed by a previous operator of the warehouse prior to 1985. In that capacity, he would report any problems relating to the railroad spur tracks to the prior owners’ representative, who would arrange for appropriate repair or maintenance. Mr. Watts was subsequently employed by Gallant after it purchased the property in 1985. Between 1985 and 1987, he and René Ortlieb, Gallant’s sole stockholder, arranged for repairs and maintenance of the spur tracks, including installation of new rails and cross-ties and track gauging. In 1987, Gallant leased the warehouse to the Ciba-Geigy Corporation, but retained responsi
 
 *16
 
 bility for management and maintenance of the property. After the lease of the warehouse in 1987, the spur tracks were no longer in use, and Mr. Watts regularly inspected the warehouse about every six months, or twice a year, and also inspected it at the request of the lessee if any maintenance problems arose.
 

 On November 26, 1990, Illinois Central contracted with Steel Processing Services, Inc. (Steel Processing) to remove certain abandoned railroad side and spur tracks, including the rails and cross-ties, with Steel Processing agreeing to purchase the steel rails as scrap. Steel Processing in turn subcontracted the actual removal work with another company, which began work in September 1991. On December 1, 1991, Illinois Central issued an invoice to Steel Processing for the steel rails removed and sold under the contract, including rails allegedly removed from the two spur tracks owned by Gallant.
 

 |4Mr. Watts claimed to have witnessed a contractor removing the tracks from the ' property in June or July of 1993, and to have first contacted Larry Callender of Illinois Central by telephone on July 9, 1993, regarding the removal of the spur tracks.
 

 Gallant filed suit against Illinois Central on April 19, 1994. In its petition, it alleged that it was the owner of certain immovable property in East Baton Rouge Parish, including the railroad spur tracks, and that Illinois Central either removed the tracks, or caused them to be removed, without Gallant’s consent. It further alleged that it discovered that the tracks had been removed in July 1993. Finally, it claimed that it suffered damages in the amount of approximately $250,000.00 by reason of Illinois Central’s actions.
 

 Illinois Central filed its answer on June 10, 1994. It denied liability, and affirmatively pleaded the defenses of Gallant’s contributory negligence, third-party fault, and prescription.
 

 On March 26, 2002, Gallant amended its petition to increase the amount of its claimed special damages to $500,000.00. No answer was filed by Illinois Central, and Gallant obtained a preliminary judgment by default on June 6, 2002.
 
 [1]
 

 In its second amended and supplemental petition, filed on June 16, 2005, Gallant alleged that Progress Rail, as successor in interest to Steel Processing, was a “joint tortfeasor” with Illinois Central, and named Progress Rail as an additional defendant. Illinois Central answered, reasserting the affirmative defenses previously pleaded, and additionally pleaded Gallant’s failure to mitigate its alleged damages. After Gallant obtained a preliminary judgment by default against it, Progress Rail also Is answered, denying liability as well as its status as successor in interest to Steel Processing, and further affirmatively pleading the defenses of prescription, contributory negligence, third-party fault, failure to mitigate damages, and equitable estoppel.
 

 On March 20, 2008, Illinois Central filed a peremptory exception of prescription. On April 10, 2008, Progress Rail also excepted to Gallant’s petition on the grounds of prescription.
 

 The defendants’ exceptions were heard on April 28, 2008. Evidence was introduced, and following argument of counsel, the trial court ruled that it would sustain the exceptions and dismiss Gallant’s cause of action. In its brief written reasons for judgment, the trial court expressly noted the factual dispute as to the date of removal of the tracks, and resolved the issue in
 
 *17
 
 favor of the defendants, on the basis of the 1991 invoice from Steel Processing to Illinois Central. Its judgment was signed on May 16, 2008. Gallant then instituted this devolutive appeal.
 

 ASSIGNMENTS OF ERROR
 

 Gallant contends that the trial court erred in the following respects:
 

 (1) The trial court erred when it found all of Gallant’s claims to be prescribed.
 

 (2) The trial court erred when it refused to consider Gallant’s breach of contract claims.
 

 ANALYSIS
 

 All personal actions, including actions to enforce contractual obligations, are generally subject to a liberative prescription of ten years, unless otherwise provided by legislation. La. C.C. art. 3499. Delictual actions are subject to a liberative prescription of one year, running from the day injury or damage is sustained. La. C.C. art. 3492. Louisiana Civil Code art. 3493 further provides that “[wjhen damage is caused to immovable | ^property, the one year prescription commences to run from the day the owner of the immovable acquired, or
 
 should have acquired,
 
 knowledge of the damage.” (Emphasis supplied.) Thus, the proper characterization of the nature of Gallant’s cause of action is crucial to the determination of the issues before us.
 

 Because the determination of Gallant’s first assignment of error, relating to prescription, may depend in part upon the validity of its second assignment of error, relating to characterization of its cause of action, we will first address the latter.
 

 Gallant’s Cause of Action
 

 The nature of the duty breached determines whether the action is in tort or in contract.
 
 Roger v. Dufrene,
 
 613 So.2d 947, 948 (La.1993). The classic distinction between damages
 
 ex contractu
 
 and damages
 
 ex delicto
 
 is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons.
 
 Thomas v. State Employees Group Benefits Program,
 
 05-0392, p. 5 (La.App. 1st Cir.3/24/06), 934 So.2d 753, 757. Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are actually grounded in tort.
 
 Id.
 
 The mere fact that the circumstances arose in the context of a contractual relationship does not make the cause of action contractual. The courts are not bound to accept a plaintiffs characterization of the nature of his cause of action if unsupported by factual allegations.
 
 Id.
 

 Notably, Gallant’s petition contains no allegations asserting a contractual breach by Illinois Central relating to the removal of Illinois Central’s own switch and turnout tracks, which were clearly the subject matter of the contractual provision requiring thirty-day notice. Rather, its 17claims relate solely to the alleged tortious removal of its spur tracks from its immovable property. Despite the existence of the railroad track use and maintenance agreement between Illinois Central and the prior owners, Gallant’s claim relating to the damage to its immovable property caused by the physical removal of its railroad spur tracks is clearly delictual in nature.
 
 See
 
 2 A.N. Yiannopoulos,
 
 Louisiana Civil Law Treatise: Property
 
 § 293 (2nd ed.2001). Its claim relating to the removal and loss of the disassembled steel rails, no longer attached to the immovable property, presents a closer question.
 

 A conversion is committed when any of the following occurs: (1) possession
 
 *18
 
 is acquired in an unauthorized manner; (2) the movable is removed from one place to another with the intent to exercise control over it; (3) possession of the movable is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the movable is altered or destroyed; (6) the movable is used improperly; or (7) ownership is asserted over the movable.
 
 Dual Drilling Co. v. Mills Equip. Investments, Inc.,
 
 98-0343, 98-0356, p. 4 (La.12/1/98), 721 So.2d 853, 857. In that case, the supreme court articulated the above principles for the civilian cause of action for conversion, and recognized three forms of legal actions available: (1) the revendicatory action; (2) an action for unjust enrichment, based upon quasi-contractual principles; and (3) a delictual action.
 
 Dual Drilling Co.
 
 at p. 4, 721 So.2d at 856-57. Significantly, the supreme court addressed only the third or delictual action, based upon the fact that the plaintiff “allege[d] a cause of action in tort rather than one for unjust enrichment.”
 
 Dual Drilling Co.
 
 at p. 4, 721 So.2d at 856.
 

 Gallant’s cause of action is based upon the alleged wrongful damage to its immovable property by removal of the spur tracks and the related Isconversion of the disassembled steel rails or tracks. Arguably, the physical detachment of the tracks from the immovable property and the removal and disposal of the disassembled steel rails should be treated as one wrongful act of “trespass” for purposes of characterization of Gallant’s cause of action.
 
 See
 
 Yiannopoulos,
 
 supra,
 
 and 12 William E. Crawford,
 
 Louisiana Civil Law Treatise: Tort Law
 
 §§ 12.11, 12.12 (2000). But even if the removal and disposal of the rails is properly characterized as a separate act of conversion, we conclude that both of those alleged acts by the defendants are delictual in nature. Gallant’s petition expressly characterizes the defendants as tortfeasors, and in response to Gallant’s allegations, the defendants affirmatively pleaded the tort defenses of contributory negligence, third-party fault, and failure to mitigate damages. Based upon the allegations of its petition, as amended, Gallant’s cause of action against the defendants clearly sounds in tort.
 

 Gallant also contends that the allegations of its petition and the evidence support a quasi-contractual claim for unjust enrichment, subject to the ten-year prescriptive period of La. C.C. art. 3499. As previously observed, we disagree. But even if its allegations could be broadly construed to encompass such a claim, we conclude that any equitable action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delic-tual action, for the following reasons.
 

 A court may resort to equity only where positive or express law does not apply.
 
 See
 
 La. C.C. art. 4. The quasi-contractual action for unjust enrichment, or
 
 actio de in rem verso,
 
 was first defined in our jurisprudence in the seminal case of
 
 Minyard v. Curtis Products, Inc.,
 
 251 La. 624, 205 So.2d 422 (1968). The five elements or prerequisites of an
 
 actio de in rem verso
 
 are the following: (1) there must be an enrichment; (2) there must labe an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of “justification” or “cause” for the enrichment and impoverishment; and (5) the action will only be allowed when there is no other remedy at law,
 
 i.e.,
 
 the action is subsidiary or corrective in nature.
 
 Minyard,
 
 251 La. at 651-52, 205 So.2d at 432. The fifth element or prerequisite holds that unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided.
 
 Mouton v. State,
 
 525 So.2d 1136, 1142 (La.
 
 *19
 
 App. 1st Cir.),
 
 writ denied,
 
 526 So.2d 1112 (La.1988). Because Gallant has a delictual cause of action, it is precluded from having an equitable remedy for unjust enrichment.
 
 See Mouton,
 
 525 So.2d at 1143.
 

 Based upon the foregoing, we conclude that Gallant’s second assignment of error has no merit.
 

 Delictual Prescription
 

 Generally, the party pleading prescription has the burden of proving the facts supporting the exception.
 
 Quality Gas Products, Inc. v. Bank One Corp.,
 
 03-1859, p. 4 (La.App. 1st Cir.6/25/04), 885 So.2d 1179, 1181. A prescriptive period will begin to run even if the injured party does not have
 
 actual
 
 knowledge of facts that would entitle him to bring a suit as long as there is
 
 constructive
 
 knowledge of same.
 
 Campo v. Correa,
 
 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 510. (Emphasis supplied.) Illinois Central presented evidence that the only activity on its part that may have related to the removal of Gallant’s spur tracks was the contract work performed by Steel Processing, and that such work would have been completed by the end of November 1991, since its business practice was not to invoice the purchaser of scrap steel rail until after all work had been completed.
 

 | ipGallant contends that the trial court’s finding of fact that the tracks were removed no later than December 1, 1991, based upon Illinois Central’s invoice of that date, was manifestly erroneous. If evidence is introduced at the hearing on the peremptory exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard of review.
 
 Carter v. Haygood,
 
 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. The evidence introduced at the hearing of the defendants’ exceptions included deposition testimony, contracts, invoices, and other documents, but no live witness testimony. Nevertheless, the manifest error standard applies even when the evidence before the trial court consists solely of written reports, records, or depositions.
 
 Shephard v. Scheeler,
 
 96-1690, pp. 12-15 (La.10/21/97), 701 So.2d 1308, 1315-16;
 
 Virgil v. American Guar. & Liab. Ins. Co.,
 
 507 So.2d 825 (La.1987). In weighing the conflicting evidence pertaining to the time frame within which the tracks were removed, the trial court determined that the invoice and supporting testimony relating to it were more credible and convincing than Mr. Watts’s notes and his testimony based upon them.
 
 [2]
 
 The trial court’s finding is entitled to deference and is not clearly wrong.
 

 Contra non valentem non cur-rit praescriptio
 
 is a Louisiana jurisprudential doctrine under which prescription may be suspended.
 
 Carter,
 
 04-0646 at p. 11, 892 So.2d at 1268. Because the doctrine is of equitable origin, it only applies in exceptional circumstances.
 
 See Renfroe v. State ex rel. Dep’t of Transp. & Dev.,
 
 01-1646, p. 9 (La.2/26/02), 809 So.2d 947, 953. There are four recognized categories of this doctrine: (1) where there |uwas some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or
 
 *20
 
 acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.
 
 Carter,
 
 04-0646 at pp. 11-12, 892 So.2d at 1268. The third listed category encompasses situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by some concealment or fraudulent conduct on the part of the defendant.
 
 Carter,
 
 4-0646 at p. 12, 892 So.2d at 1269. The fourth category, commonly known as the “discovery rule,” is an equitable pronouncement that statutes of limitation do not begin to run against a person whose cause of action is not reasonably known or discoverable by him, even though his ignorance is not induced by the defendant.
 
 Teague v. St. Paul Fire & Marine Ins. Co.,
 
 07-1384, pp. 11-12 (La.2/1/08), 974 So.2d 1266, 1274.
 

 Although Gallant concedes in brief that the first three categories of
 
 contra non valentem
 
 would not apply under the facts, it seeks to justify its failure to discover the removal of the railroad spur tracks by emphasizing Illinois Central’s supposed contractual duty to notify it of the removal of the tracks. Thus, its argument in that regard seems to be based more upon the third category than the fourth. Even if it is assumed that Illinois Central in fact owed such a duty to Gallant, rather than to only the prior owners, the very contract upon which Gallant relies imposed upon it the duty of maintaining those tracks in a condition that would accommodate passage of |12railroad engines and cars. Such a contractual duty surely would encompass a duty to periodically monitor the condition of the railroad spur tracks, independent from but in addition to the general legal duty of a property owner to reasonably maintain his property. The physical removal of the spur tracks could not have been practicably accomplished in a hidden or surreptitious manner, and the absence of 3,650 linear feet of steel railroad tracks was an open and obvious condition of the property, which should have been conspicuous to an owner of immovable property exercising reasonable care in its maintenance.
 

 As the party asserting the benefit of
 
 contra non valentem,
 
 Gallant bore the burden of proof of its requisite elements and applicability.
 
 See Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.,
 
 07-2206, p. 7 (La.App. 1st Cir.6/6/08), 992 So.2d 527, 531,
 
 writ denied,
 
 08-1478 (La.10/3/08), 992 So.2d 1018. Gallant presented deposition testimony to the effect that Mr. Watts’s periodic inspections were limited to the warehouse, and suggests that neither he, Mr. Ortlieb, nor Gallant had any reason to inspect the condition of the unused railroad spur tracks behind the warehouse. The trial court implicitly found that Gallant failed to meet its burden of proof relating to
 
 contra non valentem
 
 and should be charged with constructive knowledge of the removal of the tracks from its property. In doing so, the trial court evidently concluded that both the damage to the railroad spur tracks, as immovable property, and the conversion of the steel rails were “reasonably knowable,” or should have been known, no later than April 19, 1993, a year prior to suit being filed and over sixteen months after the tracks were found to have been actually removed. Thus, neither the third nor fourth category of
 
 contra non valentem
 
 would apply to defeat prescription. The trial court’s factual findings in that regard are supported |1sby the record and not manifestly erroneous. Gallant’s first assignment of error also lacks merit.
 

 CONCLUSION
 

 The judgments of the trial court sustaining the peremptory exceptions of the
 
 *21
 
 defendants, Illinois Central Railroad Company and Progress Rail Services Corporation, and dismissing the cause of action of the plaintiff, Gallant Investments, Ltd., are affirmed. All costs of this appeal are assessed to the plaintiff.
 

 AFFIRMED.
 

 GUIDRY, J., concurs.
 

 [1]
 

 . The preliminary judgment by default was never confirmed.
 

 [2]
 

 . The trial court may have concluded that Mr. Watts was truthfully testifying that he personally observed the contractor’s employees removing the steel rails, but was mistaken as to the date of that observation, confusing the dates of the telephone calls documented in his notes with the date of his observation. In short, the trial court could reasonably have concluded that Mr. Watts’s telephone calls were made long after his observation of the activity.