GERALD CEASOR,
v.
STATE OF LOUISIANA, ET AL.
No. 2009 CA 1584.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication
DORWAN G. VIZZIER, Alexandria, LA, Attorney for Plaintiff-Appellant Gerald Ceasor.
MICHAEL A. PATTERSON, SEBASTIAN C. ASHTON, Baton Rouge, LA, Attorneys for Defendant-Appellee State of Louisiana, et al.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
WELCH, J.
Plaintiff, Gerald Ceasor, appeals a judgment granting a peremptory exception raising the objection of prescription filed by defendant, State of Louisiana through the Office of the Commissioner of Insurance. We reverse, overrule the peremptory exception, and remand.[1]

BACKGROUND
Some of the facts forming the basis of the prescription objection urged by the State were stipulated to by the parties and can also be gleaned from a prior decision from this court involving the same parties, Ceasor v. State of Louisiana, 99-0324 (La. App. 1st Cir. 3/31/00)(unpublished), writ denied, XXXX-XXXX (La. 6/16/00), 765 So.2d 337. (See R72-75). On or about July 21, 1983, Mr. Ceasor purchased a single premium annuity policy from Mid America Assurance Company of Louisiana (Mid America) for $100,000.00. The parties stipulated that the policy issued to Mr. Ceasor is a registered policy under the terms of La. R.S. 22:1029 and includes Certificate of Deposit No. 101 signed by then Commissioner of Insurance, Sherman Bernard. In Certificate of Deposit No. 101, the Insurance Commissioner certified that Mid America invested and maintained stipulated securities required by Louisiana law and that Mid America had on deposit with the Commissioner of Insurance such stipulated securities equal in amount to the net cash value of all outstanding policies as shown in its last annual statement.
Pursuant to the terms of the policy, Mid America was to pay Mr. Ceasor monthly annuity payments of $1,000.00 for 240 months. Payments were made by Mid America to Mr. Ceasor based on the annuity policy through February 9, 1988. On April 20, 1988, by order of the 19th Judicial District Court for the Parish of East Baton Rouge, Mid America was placed into liquidation and the Commissioner of Insurance was appointed as Liquidator. The liquidation order remained in effect at least through the date of the stipulation, April 1, 1996.
On August 4, 1988, the trial court granted the request to liquidate Mid America. A notice of the liquidation was issued to all policyholders, including Mr. Ceasor, on August 31, 1988. Therein, the policyholders were advised that the Commissioner of Insurance had been directed to take possession and control of Mid America's assets and to determine all claims against Mid America. The notice further set forth a deadline of February 3, 1989, for filing claims against Mid America.
On November 2, 1988, Mr. Ceasor timely asserted a claim against Mid America in the liquidation proceeding. On August 17, 1990, Mr. Ceasor was notified that his "allowable benefits" in the liquidation proceeding was $101,451.64, reflecting the amount the Liquidator believed would have been payable by Mid America if the company had not been placed in liquidation and the amount the Liquidator would recommend that the court approve as an allowed claim to participate pro-rata with other claimants of the same priority.
During the course of the liquidation proceedings, Mr. Ceasor sought information as to when he could expect to receive payment. In February of 1992, Mr. Ceasor sought information in the liquidation proceeding as to whether the Liquidator had recovered funds being held by the State on his registered policy and what steps he should take to recover those funds; alternatively, Mr. Ceasor inquired as to what steps the Liquidator had taken to recover those funds and what was the State's position regarding the return of those funds to him.
On September 14, 1992, Mr. Ceasor filed this lawsuit against the State of Louisiana and the State of Louisiana through the Office of the Commissioner of Insurance (collectively referred to as the "State"), asserting that based on the Certificate of Deposit issued in connection with his annuity, the State had on deposit stipulated securities equal to the amount of net cash value of his policy, which had been held in trust for the deferred payments due under the provisions of the annuity policy, and sought to recover the remaining sums due under the policy or the net cash value of the policy from the State. Alternatively, Mr. Ceasor alleged, if Mid America did not have the statutorily required deposit necessary to fund his annuity as indicated in Certificate of Deposit No. 101, the failure of the Commissioner of Insurance to enforce the provisions of La. R.S. 22:1029[2] relative to registered policies constituted fault and negligence under La. C.C. art. 2315, and that he relied, to his detriment, upon the assertions and representations of the State in purchasing the annuity policy. In a supplemental petition, Mr. Ceasor asserted an additional contract cause of action against the State.
Mr. Ceasor's lawsuit was consolidated with the three similar cases pending in the 19th Judicial District Court. The State filed a peremptory exception raising the objection of prescription as to all of the lawsuits, asserting they were prescribed on their face because the annuity contracts purchased by all of the plaintiffs ceased to perform no later than 1988 and all of the lawsuits were filed more than a year beyond the date on which the annuity contracts ceased to perform. The State also filed a motion for summary judgment against some of the plaintiffs, including Mr. Ceasor, insisting that it had no liability as a matter of law in contract. The State further argued that because the cause of action asserted by Mr. Ceasor and the other annuitants was delictual in nature and governed by a liberative prescription of one year, the annuitants' claims, filed more than one year after the date the annuity contracts ceased to perform, had prescribed.
The trial court granted the motion for summary judgment, dismissing Mr. Ceasor's contract and tort claims against the State. Mr. Ceasor appealed that ruling to this court, arguing that the doctrine of contra non valentem suspended the running of prescription on his tort claim against the State. Before this court, on the prescription issue, the State argued that Mr. Ceasor knew he had a cause of action against the State after Mid America stopped making payments on the annuity policy in February of 1988. Mr. Ceasor claimed he did not know he would not be paid in full on his claim until he received the State's June 24, 1994 responses to his discovery requests, in which the State denied having the stipulated securities on deposit. Ceasor, XXXX-XXXX, at p. 9. This court reversed the summary judgment, concluding that there was a factual dispute on the issue of when Mr. Ceasor's delictual cause of action against the State was known or reasonably knowable so as to trigger the running of the one-year prescriptive period. Id.
Following the remand by this court, the State filed another peremptory exception of prescription, urging that because the annuity ceased to perform in early 1988, a reasonable person would have, at that time, made an inquiry into alternative sources of reimbursement. This information, the State contended, was sufficient to start the running of prescription. Mr. Ceasor claimed he did not have knowledge that the State did not perform as required by the registered policy law until after the instant lawsuit had been filed in September of 1992.
At the outset of the hearing on the exception of prescription, Mr. Ceasor took the stand, and when asked to identify the policy he purchased from Mid America, the State objected, urging that such evidence was completely irrelevant. The State insisted that the only fact relevant to the prescription issue was that the policy stopped paying on February 9, 1988, and submitted that Mr. Ceasor had no evidence to show an interruption of prescription. The trial court agreed and asked Mr. Ceasor's attorney what evidence he had to show that prescription had been interrupted. Mr. Ceasor's attorney responded that this case did not involve an interruption of prescription, but rather, the issue of when prescription began to run on Mr. Ceasor's claim against the State. The attorney admitted he had no evidence of an interruption, but wanted to introduce evidence in support of his claim that Mr. Ceasor did not have notice of the State's failure to perform its obligations under the registered policy law with respect to his policy until after the lawsuit had been filed.
The trial court agreed with the State's argument that Mr. Ceasor's evidence was not relevant to the prescription issue, but allowed the evidence to be proffered in order to have a complete record in the event the ruling was appealed. On the proffer, Mr. Ceasor testified that he was told that the policy would be guaranteed by the State. Mr. Ceasor identified Exhibit 3, the order liquidating Mid America issued on August 3, 1988, and Exhibit 4, the notice he received that was issued to policyholders on August 31, 1988, apprising them of the liquidation and the deadline to file claims against Mid America. Mr. Ceasor testified that after he received notice of the liquidation, he contacted his attorney, Mr. Daniel Broussard, who filed a proof of claim in the liquidation. Mr. Ceasor stated that he received a letter identified as Exhibit 8, dated August 17, 1990, in response to his proof of claim, setting forth his "allowable benefits" in the liquidation proceeding of $101,451.64. Mr. Ceasor testified that prior to filing the instant lawsuit on September 14, 1992, he had no knowledge that the Commissioner of Insurance had not required that deposits be made in accordance with the registered policy law with respect to his annuity policy and that he did not receive any specific notice from anyone that the State or the Commissioner of Insurance was not going to issue him any payment under the liquidation.
Continuing on the proffer, Mr. Broussard, who assisted Mr. Ceasor in filing claims in connection with the liquidation proceeding, testified. He stated that it was his understanding, as well as Mr. Ceasor's, that the annuity policy was to be guaranteed by the State. Mr. Broussard testified that when he filed the claim in the liquidation, he assumed that the Commissioner of Insurance, who was also the Liquidator, would have informed him whether Mid America was going to distribute the money to Mr. Ceasor or whether the State would pay on its guarantee. Mr. Broussard, who attested that he never heard anything from the Commissioner of Insurance other than the fact that the Commissioner of Insurance as Liquidator of Mid America acknowledged Mr. Ceasor's claim, began making inquiries to the Commissioner of Insurance about the guarantee, and that was what prompted the instant lawsuit.
In connection with his testimony, Mr. Broussard identified Exhibit 5 as a letter dated November 2, 1988, with an attached proof of claim filed on Mr. Ceasor's behalf in the liquidation proceeding. He identified Exhibit 6 as a letter dated January 5, 1989, written by another attorney in his law firm at his instruction to the attorney for the Liquidator asking for a determination as to whether there was reinsurance on Mr. Ceasor's policy. Next, Mr. Broussard identified Exhibit 7, a letter written in response to the request regarding reinsurance on April 3, 1989, referencing a Reinsurance Agreement executed between Mid America and Professional Investors Life Insurance Company signed on October 1, 1986, and attachments thereto. The letter apprised that the Reinsurance Agreement would not cover Mr. Ceasor's annuity policy because the policy had been obtained in 1983. Mr. Broussard identified Exhibit 9, a letter from an attorney in his law firm to Mid America in Liquidation dated November 13, 1990, confirming a telephone conversation in which the attorney sought to obtain an estimate of a time when a proposed distribution would be filed with the court or a distribution would be made to the creditors. The letter confirmed that the attorney was advised that not all of the assets had yet been liquidated and no estimates could be given.
Continuing on the proffer, Mr. Broussard identified Exhibits 10 and 11, reflecting letters written by him to the attorneys for the Liquidator on February 21 and 24, 1992. Therein, Mr. Broussard asked for information as to whether the Liquidator had recovered funds on deposit being held by the State on Mr. Ceasor's policy and, if so, to advise him of the steps to be taken in order to recover those funds. Alternatively, the letters requested information regarding what steps the Liquidator had taken to obtain these funds with respect to the registered policies and what the State's position was with respect to the return of those funds certified under the Certificate of Deposit issued by the Commissioner of Insurance to Mr. Ceasor. Mr. Broussard acknowledged that prior to this time, he had not received any information from the State, the Commissioner of Insurance, or anyone associated with Mid America that the State had not obtained deposits for Mr. Ceasor's annuity policy required under the State registered policy laws.
Mr. Broussard also identified copies of the original petition and amending petition as Exhibit 12, as well as the State's June 24, 1994 responses to Mr. Ceasor's discovery requests as Exhibit 13. In its answers to interrogatories, the State admitted it was unable to state with certainty whether the statutory deposit in the amount of $100,000.00 was made by Mid America in 1983. The State, when asked why it did not have any of the securities mentioned in Certificate of Deposit No. 101, responded that when Mid America was liquidated, the $100,000.00 sum was placed into an operating account to pay liquidation expenses. Mr. Broussard testified that this was the first explicit notice received from the State that it did not have the funds and had not required the deposit of the funds by Mid America in connection with Mr. Ceasor's policy.
Lastly, Mr. Ceasor sought to introduce the depositions of former or current Mid America employees, Mr. Fredrick Chiquet, Dr. Jan Duggar, Ms. Carolyn Greely, and Ms. Susan Porter. The State objected to the depositions on the grounds of relevance, and the trial court sustained the objection and permitted Mr. Ceasor to proffer them.
Following the conclusion of the hearing, the trial court agreed with the State's position that prescription began to run on Mr. Ceasor's claim when payments on the policy ceased in 1988 and granted the exception of prescription. The court felt that at the time the annuity ceased performing, Mr. Ceasor knew or should have known that he had a cause of action against the Department of Insurance for mismanagement of the registration laws. The court noted that Mr. Ceasor admitted he had knowledge before the annuity stopped paying that the State stood behind or would guarantee the annuity. Thus, the court concluded, when the policy did stop paying in 1988, Mr. Ceasor already knew that he had a cause of action against the Department of Insurance. The court then rejected all of the bases for the application of the doctrine of contra non valentem advanced by Mr. Ceasor. From the judgment granting the State's peremptory exception of prescription, Mr. Ceasor appealed.

EVIDENTIARY RULING
In his first and second assignments of error, Mr. Ceasor contends that the trial court committed legal error and an abuse of discretion in failing to admit his testimony, his attorney's testimony, and all of his exhibits on the prescription exception. Mr. Ceasor submits that the trial court erred as a matter of law in requiring that he demonstrate an interruption of prescription and refusing to allow him to offer evidence of lack of notice or knowledge of the State's failure to perform its obligations under the registration laws prior to filing the lawsuit.
We agree. This court has previously determined that Mr. Ceasor's cause of action is delictual in nature. The prescriptive period for a delictual cause of action is one year. La. C.C. art. 3492. Ordinarily, the party asserting the plea of prescription bears the burden of proof at trial of the peremptory exception. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La. 1992). However, as the party asserting the benefit of contra non valentem, Mr. Ceasor bore the burden of proof of its requisite elements and applicability. Gallant Investments, Ltd. v. Illinois Central Railroad Company, XXXX-XXXX, p. 12 (La. App. 1st Cir. 2/13/09), 7 So.3d 12, 20.
At the trial of the peremptory exception, Mr. Ceasor sought to offer evidence in support of his claim that prescription was suspended under the fourth category of the doctrine of contra non valentem, known as the "discovery rule." This doctrine is an equitable pronouncement that statutes of limitation do not begin to run against a person whose cause of action is not reasonably known or discoverable by him, even though his ignorance is not induced by the defendant. Teague v. St Paul Fire & Marine Insurance Company, XXXX-XXXX, pp. 11-12 (La. 2/1/08), 974 So.2d 1266, 1274; Gallant Investments, Ltd., XXXX-XXXX at p. 11,7 So.3d at 20. Mr. Ceasor was entitled to offer relevant evidence in support of his claim that he lacked the requisite knowledge necessary to commence the running of the one-year prescriptive period on his cause of action against the State.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Evidence of Mr. Ceasor's knowledge and the reasonableness or unreasonableness of his actions is relevant to the issue of the applicability of the discovery rule. We find that the trial court erred in refusing to admit any evidence on the knowledge issue.
After thoroughly reviewing the evidence offered by Mr. Ceasor, we find that his testimony, the testimony of his attorney, and Exhibits 1-13 should have been allowed into evidence by the trial court. However, Exhibits 14-17, consisting of depositions of Mid America employees, bear no relevance to the issue of Mr. Ceasor's knowledge and therefore were properly excluded at the trial of the prescription exception.
Generally, where evidence is introduced at the hearing on the peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard of review. Gallant Investments, XXXX-XXXX at p. 10, 7 So.3d at 19. However, the trial court refused to admit evidence in support of Mr. Ceasor's claim and instead found that prescription on his claim against the State commenced when the annuity ceased performing in 1988. Because the trial court committed legal error in excluding relevant evidence on the knowledge issue, and because the record is otherwise complete, we shall make our own independent de novo review of the evidence and render judgment on the merits. Campo v. Correa, 2001-2707, p. 10 (La. 6/21/02), 828 So.2d 502, 510.

PRESCRIPTION
Prescription on a delictual cause of action commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort. Babineaux v. State, Department of Transportation and Development, 2004-2649, p. 3 (La. App. 1st Cir. 12/22/05), 927 So.2d 1121, 1123. An injured party has constructive notice when he or she possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry, and includes knowledge or notice of everything to which that inquiry might lead. Id.
Mr. Ceasor seeks to avail himself of the benefit of the doctrine of contra non valentem non currit praescriptio, which simply means that prescription does not run against a person who cannot bring a lawsuit. Babineaux, 2004-2649 at p. 4, 927 So.2d at 1124. The doctrine of contra non valentem is a jurisprudentiallycreated exception based on the premise that in some circumstances, equity and justice require that prescription be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his will. Id.
The fourth category of "contra non valentem" known as the "discovery rule," prevents the running of liberative prescription where the cause of action is neither known or reasonably knowable by the plaintiff even though the plaintiffs ignorance is not induced by the defendant. It begins with the principle that a plaintiff is deemed to know what he could have learned through reasonable diligence. Babineaux, 2004-2649 at p. 5, 927 So.2d at 1124. A plaintiff need not have actual knowledge of the conditions which might entitle him to bring suit, but only "constructive notice." Terrel v. Perkins, 96-2629, p. 5 (La. App. 1st Cir. 11/7/97), 704 So.2d 35, 39. As a general rule, prescription begins to run from the time when there is notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim. Id.
The precise point at which a plaintiff becomes aware of facts sufficient for prescription to begin running is often difficult to identify, but the question is answered based on whether the plaintiff was reasonable in delaying filing suit in light of the information known to him. Caro v. Bradford White Corporation, 96-120, p. 6 (La. App. 5th Cir. 7/30/96), 678 So.2d 615, 618. Therefore, in determining whether the discovery rule suspends the running of prescription, the ultimate issue is the reasonableness of the plaintiffs action or inaction. See Campo, 2001-2707 at p. 12, 828 So.2d at p. 511.
The evidence on the peremptory exception of prescription reflects that after purchasing an annuity policy in 1983 from Mid America, Mr. Ceasor received payments pursuant to the terms of that policy until February 9, 1988. Several months after the payments ceased, Mid America was placed into liquidation and the Commissioner of Insurance was appointed to liquidate the company. Mr. Ceasor timely and actively pursued his claim as a creditor of Mid America in the liquidation proceeding. On August 17, 1990, Mr. Ceasor was notified by the Commissioner of Insurance as the Liquidator of Mid America that his claim in the liquidation proceeding had been allowed and that the Liquidator was recommending that Mr. Ceasor's allowable benefit, $101,451.64, be approved by the court. Mr. Ceasor began inquiring in November of 1990 as to a time frame by which he could expect payment in the liquidation proceeding and was informed that the assets had not yet been liquidated and that no estimates could be provided as to a time period for distribution.
Thereafter, Mr. Ceasor began to inquire, through letters written by his attorney to the attorney for the Liquidator, on February 22 and 24, 1992, whether the Liquidator had recovered the securities or funds Mr. Ceasor believed the State was required by law to hold in connection with his registered policy. Mr. Broussard testified that prior thereto, he had not received any indication that the State, the Commissioner, or anyone from Mid America had not obtained the required deposits and had not performed for the annuity policy under the registered policy laws. Mr. Broussard explained that because the Liquidator of Mid America was the Commissioner of Insurance, he expected such information on the State's position regarding the deposits to be forthcoming.
Mr. Ceasor testified that prior to filing the lawsuit on September 14, 1992, he did not receive notice from anyone that the State did not have the required deposits and had not received specific notice that he would be issued any payments in the liquidation proceeding by either the State of the Commissioner of Insurance. On June 4, 1994, two years after the lawsuit was filed, the State admitted it did not have the sought-after securities because when Mid America was liquidated, the $100,000.00 was placed into an operating account to pay liquidation expenses.
Considering the evidence on the exception of prescription, we find that the trial court clearly erred in finding that non-payment on Mr. Ceasor's annuity by Mid America started the running of the one-year prescriptive period on Mr. Ceasor's delictual cause of action against the State for allegedly negligently failing to follow the registered policy law. The non-payment by Mid America did not put Mr. Ceasor on notice that the State did not follow the registration laws regarding a security deposit for his annuity. Nor did that non-payment trigger an obligation on his part, at that point in time, to investigate alternate sources of payment or whether the Commissioner of Insurance failed to follow the law in issuing the Certificate of Deposit. Shortly after the payments ceased, Mid America was placed into liquidation; the Commissioner of Insurance was appointed to liquidate the company. Mr. Ceasor was instructed to pursue his claim for payment by Mid America therein and did so. Mr. Ceasor was notified on August 7, 1990, that his claim for $101,451.64 was being allowed in the liquidation proceeding and learned in response to his inquiry of a time frame for payment on his claim that the assets of Mid America had not been liquidated as of November 13, 1990. During this time, Mr. Ceasor had every reason to expect that his claim would be allowed in the liquidation proceeding.
In February of 1992, after receiving no relief in the liquidation proceeding on his claim on the annuity policy, Mr. Ceasor began to inquire in that proceeding whether the Liquidator had recovered funds being held by the State on deposit for registered policies and what steps he should take to recover those funds, or alternatively, what steps the Liquidator had taken to recover these funds and what was the State's position regarding the return of those funds to Mr. Ceasor. Because the Commissioner of Insurance was the Liquidator in that proceeding, Mr. Ceasor reasonably relied on the Commissioner of Insurance, who was in a position to know such information, to provide him with such information. Nevertheless, it was not until over two years after this lawsuit was filed that the State, through the Commissioner of Insurance, the alleged tortfeasor in this case, finally admitted it could not confirm a deposit had been made by Mid America in connection with Mr. Ceasor's policy and that the $100,000.00 fund the State did have had been turned over in the liquidation proceeding to pay liquidation costs.
We believe that the doctrine of contra non valentem suspended the running of prescription on Mr. Ceasor's cause of action against the State. Mr. Ceasor actively and diligently pursued his claim against Mid America in the liquidation proceeding and waited a reasonable period of time for the Liquidator to orderly process his claim therein before initiating an investigation into whether the State was holding the statutorily required securities on his annuity policy as an alternative source of payment. Mr. Ceasor reasonably relied on the Commissioner of Insurance's allowance of his claim against Mid America and attempted to obtain information regarding the deposit from the Commissioner of Insurance, who was in a position to provide Mr. Ceasor with such information, but did not. Mr. Ceasor testified that he did not have actual knowledge of the alleged negligent acts of the State, and there is no evidence in the record from which such knowledge can be inferred. Under all of these circumstances, we find that Mr. Ceasor's delay in pursuing a tort claim against the State for failing to have the statutorily required deposit necessary to fund the annuity until over four years after the insurance company ceased performing is entirely reasonable. Accordingly, we hold that the trial court erred in sustaining the State's peremptory exception of prescription.

CONCLUSION
Based on the foregoing, the judgment sustaining the peremptory exception raising the objection of prescription is hereby reversed, the exception is overruled, and the case is remanded to the trial court for proceedings consistent with this opinion. Appeal costs, in the amount of $1,147.50, are assessed to the State of Louisiana, through the Department of Insurance.
REVERSED AND REMANDED.
NOTES
[1] The State filed a motion to supplement the appeal record to include its response to a memorandum in opposition to the exception of prescription. We grant the motion to supplement.
[2] Louisiana Revised Statutes 22:1029 was renumbered R.S. 22:809 by 2008 La. Acts No. 415, § 1, effective January 1,2009.