GUIDRY, J.
[ gPlaintiffs-lessors, Lorise M. and Lucy Nguyen Naquin and Grantly, LLC (collectively the Naquins), appeal that portion of the trial court’s judgment that sustained a peremptory exception raising the objection of prescription and dismissed their claims for damages ex delicto arising out of five of six leases they have with defendant, Bol-linger Shipyards, Inc. (Bollinger). Bol-linger appeals that portion of the trial court’s judgment that overruled its dilatory exception raising the objection of prematurity. For the reasons that follow, we affirm the trial court’s ruling on the exception of prescription, and we convert Bol-linger’s appeal to a writ and deny the writ.
FACTUAL AND PROCEDURAL BACKGROUND
It is undisputed that the Naquins are owners of real property located in La-fourche Parish, just west of Larose, Louisiana. Pursuant to a series of six leases, entered into by both the parties and their predecessor interests, Bollinger has used the Naquins’ property for shipyard operations. Three of the leases were entered into by the parties on May 24,1990, including Leases A and B. The other three leases were entered into prior to that time. Of the six leases, four are for property located on the banks of the Intracoastal Waterway (the Intracoastal Waterway Leases). Leases A and B are adjacent to one another, with Lease A located primarily northwest and west of Lease B. These two leases are comprised exclusively of interior real property.
On April 8, 2005, the Naquins filed this lawsuit seeking damages for disbursement and deposits of lead, asbestos, petroleum, and other toxic, polluting, carcinogenic *878 and noxious chemicals and substances (toxic substances) by Bollinger on the property that the Naquins had leased to the shipyard. They alleged that the |sU.S. Environmental Protection Agency had investigated the property and located toxic substances, and that Bollinger’s concealment of intentionally deposited and buried toxic substances was in bad faith. They sought compensatory and punitive damages as well as rescission and termination of the lease. On November 29, 2005, Bol-linger answered the lawsuit, generally denying the allegations and asserting that the Naquins’ claims were time barred.
After answering a subsequent amendment by the Naquins to their petition, Bollinger filed, among other things, a dilatory exception of prematurity and a peremptory exception raising the objection of prescription. After a hearing, the trial court sustained both exceptions but provided the Naquins an opportunity to amend their petition.
A second amending petition was filed by the Naquins to which Bollinger again raised objections of prescription and prematurity. After another hearing, the trial court again sustained the exception of prescription and dismissed all of the Naquins’ tort claims except those relating to the property subject to Lease B. However, the trial court overruled the exception of prematurity. A judgment signed on April 11, 2011, was certified as final by the trial court. The Naquins appeal the dismissal of five of their six tort claims as prescribed, and Bollinger appeals the overruling of its exception of prematurity,
EXCEPTION OF PRESCRIPTION
Initially we note that the trial court only dismissed the Naquins’ tort claims. Thus, it is undisputed that they may proceed for damages ex contractu under their leases. See La. C.C. art. 2687 and Marin v. Exxon Mobil Corp., 09-2868 (La.10/19/10), 48 So.3d 234, 239 and 255-56; see also Onstott v. Certified Capital Corp., 05-2548 (La.App. 1st Cir.11/3/06), 950 So.2d 744, 747 (a set of 1 ¿circumstances can give rise to more than one cause of action, and each of those causes has its own prescriptive period), and Gallant Investments, Ltd. v. Illinois Cent. R.R. Co., 08-1404 (La.App. 1st Cir.2/13/09), 7 So.3d 12, 17 (the nature of the duty breached determines whether the action is in tort or in contract; the classic distinction between damages ex contractu and damages ex delicto is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons).
In reviewing a peremptory exception raising the objection of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. Onstott, 950 So.2d at 747. When evidence is received on the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the traditional rules governing appellate review of facts. As such, a trial court’s factual determinations regarding prescription should not be reversed in the absence of manifest error. Onstott, 950 So.2d at 746; Stobart v. State through Dep’t. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
In this case, although evidence was adduced at the hearing, no testimony was presented. The evidence consisted of the entire record, including the original and the amending petitions, as well as the environmental reports that Bollinger had sup *879 plied to the Naquins.[1] The last environmental report was dated June 19, 2000.
Delictual actions are subject to a liberative prescription of one year and for damage caused to immovable property, the one-year prescription commences to run Isfrom the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. See La. C.C. arts. 3492, 3493; Marin, 48 So.3d at 244.
Based on the evidence admitted, the record supports a finding that the Na-quins had in their possession an environmental report, dated June 19, 2000. But that finding would not explain how the Naquins’ tort claims were timely on April 8, 2005, because if they knew or should have known of the damage to their property by June 19, 2000, their tort claims would have prescribed by June 19, 2001. Thus, on the face of the petition, the matter was untimely. If we were to apply the manifest error standard of review, the trial court’s conclusion that the tort claims relating to Lease B were not prescribed would, therefore, be manifestly erroneous. Bollinger does not challenge the trial court’s conclusion that the Lease B tort claims were timely asserted because a review of the record shows that it has conceded it did not provide the environmental records to the Naquins until July 21, 2005, which was over three months after the lawsuit was filed.
Based on our review of the record, it is evident that the heart of this dispute centers around interpretation of the allegations contained in the Naquins’ original petition. The evidence admitted at the hearing of this matter, however, simply does not allow any factual findings that resolve the issue presented in this appeal, ie., whether the original petition timely interrupted the Naquins’ claims arising out of all six leases they have with Bollinger. In the absence of evidence, the objection of prescription must be decided upon the properly pleaded material allegations of fact alleged in the petition, and those alleged facts are accepted as true. Onstott, 950 So.2d at 747. Thus, we turn our attention to the allegations contained in the petition.
In their April 8, 2005 petition, the Na-quins set forth the following relevant allegations:
J¿V.
THE PROPERTY INVOLVED
Petitioners are the owners of certain real property on the banks of the Intra-coastal Waterway just to the West of Larose, Louisiana, which property is operated as a shipyard by [Bollinger], The property is located in Lafourche Parish.
V.
LEASE
For many years prior to 1990, Petitioners’ predecessor in title leased to and on the 24th day of May, 1990, [Bol-linger] leased from [the Naquins], the property involved in this matter, said property described above. The lease was recorded in the records of the Parish of Lafourche on May 31, 1990 in Conveyance Book 1080, Folio 280, Entry No. 712528....
In their first amending petition, filed on April 8,2010, the Naquins modified, among other things, paragraph “V,” renaming it “LEASES,” (emphasis added) articulating in specificity that the property consists of six leases and particularly describing each *880 of the six leases. The second amended petition did not aver additional facts but instead added additional legal theories and conclusions.
The party urging a peremptory exception raising the objection of prescription bears the burden of proof. Only if prescription is evident from the face of the pleadings will the plaintiff bear the burden of showing an action has not prescribed. Onstott, 950 So.2d at 747. We find nothing in the original petition that sets forth facts sufficient to establish the date that the Naquins acquired, or should have acquired, knowledge of the damage caused by Bollinger. Thus, Bollinger bore the burden of proof.
Conceding that on July 21, 2005,[2] it gave the Naquins all of the environmental reports in its possession, Bollinger asserts that the tort claims arising 17out of the five more specifically described leases set forth in the amending petition prescribed no later than July 21, 2006, one year from the date that the Naquins knew or should have known of the damage to their property as a result of any disbursements and deposits of toxic substances intentionally made and concealed from them by Bollinger. Thus, it maintains that only the tort claim related to Lease B, which was the lease “recorded in the records of the Parish of Lafourche on May 31, 1990 in Conveyance Book 1080, Folio 280, Entry No. 712528,” as stated in the original petition, was not untimely. We agree.
As set forth in Marin, in determining whether an owner of immovable property acquired or should have acquired knowledge of the damage sufficient to start the running of prescription, “the question is whether knowledge of these facts constitutes ‘the acquisition of sufficient information, which, if pursued, will lead to the true condition of things’ ... Put another way, should the knowledge of these facts have put the plaintiffs on notice that further inquiry and investigation was necessary, and would further inquiry have led to knowledge that the land was contaminated ... ?” Marin, 48 So.3d at 248. From our review of the record, the Naquins clearly had such notice when they received the environmental reports from Bollinger on July 21, 2005. Accordingly, the claims asserted in the supplemental and amending petition, filed on April 8, 2010, and well after the expiration of the one-year prescriptive period, are clearly prescribed.
The Naquins assert, however, that the claims raised in the supplemental and amending petition are nevertheless timely because they relate back to the date of the timely filed original petition. Louisiana Code of Civil Procedure article 1153 provides that “[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted |sto be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.” Pursuant to this Article, if a comparison of the amended petition to the original petition shows that the original petition gave fair notice of the factual situation out of which the amended petition arises, the amended petition will relate back to the date of the filing of the original petition. Reese v. State, Department of Public Safety and Corrections, 03-1615 (La.2/20/04), 866 So.2d 244, 248; Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985).
From our review of the record, we find no error in the trial court’s finding that the claims asserted in the supplemental and amending petition do not relate back to the date of the timely filed original petition. *881 As detailed above, the original petition states in paragraph four that “[petitioners are the owners of certain real property on the banks of the Intracoastal Waterway just to the West of Larose, Louisiana, which property is operated as a shipyard by [Bollinger.]” The subsequent paragraph, however, particularly describes only Lease B. Contrary to the Naquins’ assertion, these paragraphs do not create an inconsistency or ambiguity. The shipyard operation referenced in paragraph four, which consists of multiple parcels of land, including the land subject to Lease B, is located on the Intracoastal Waterway. However, the allegation in the subsequent paragraph indicates that the Na-quins are only seeking damages for the land subject to Lease B. Because the original petition specifically details only the land subject to Lease B, and does not discuss the other five, separate leases or parcels of land, Bollinger did not have fair notice of the claims raised in the amended petition as to the separate leases and parcels of property. Accordingly, we find no error in the trial court’s determination that the claims asserted in the amended petition do not arise |9out of the same transaction or occurrence so as to relate back to the date of the timely filed original petition and therefore, are prescribed.
EXCEPTION OF PREMATURITY
Bollinger asserts that the trial court erred in overruling its exception of prematurity with regard to the Naquins’ contractual claims. Although the denial of a dilatory exception raising the objection of prematurity is interlocutory and not immediately appealable, the trial court certified the judgment as final. However, the trial court’s denial of the exception of prematurity is not susceptible to being certified as final for purposes of immediate appeal under La. C.C.P. article 1915. Under La. C.C.P. article 2088, an interlocutory judgment is appealable only when expressly provided by law, but in the interests of judicial economy, we will convert the appeal to a writ and, under our supervisory jurisdiction, address the trial court’s ruling.[3]
The gist of Bollinger’s assertion is that because the leases have not terminated, and Bollinger is continuing to use the property as a shipyard as specified in the lease provision, the Naquins cannot sue for damages to their property at this time. The dilatory exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 04-0451 (La.12/1/04), 888 So.2d 782, 785. An action is premature when it is brought before the right to enforce it has accrued. La. C.C.P. art. 428; Williamson, 888 So.2d at 785.
In the instant case, the Naquins assert that Bollinger breached the lease by not using the premises as a prudent administrator in accordance with the purposes for | inwhich it was leased. Particularly, the Naquins assert that Bollinger deposited hazardous substances on the leased premises. Accordingly, the Naquins seek rescission and cancellation of the lease and compensatory damages adequate to restore the premises to the condition existing prior to the lease. Louisiana Civil Code article 2686 provides that “[i]f the lessee uses the thing for a purpose other than that for which it was leased or in a manner that may cause damage to the thing, the lessor may obtain injunctive relief, dissolu *882 tion of the lease, and any damages he may have sustained.” The Louisiana Supreme Court held in Marin that although La. C.C. art. 2683 contains obligations that only arise at the end of the lease, ie., return of the thing at the end of the lease in a condition that is the same as it was when the thing was delivered, there is no language to suggest that the other obligations imposed by these codal provisions are not operational until termination of the lease. These provisions, ie., La. C.C. arts. 2686, 2687, 2692, continue throughout the term of the lease, and a lessor need not wait until the end of the lease to sue a lessee for damage to his property. Marin, 48 So.3d at 256. Therefore, because the Naquins’ allegations in their petition do not arise from Bollinger’s obligation to restore the land on which the operations are ongoing, but arise from La. C.C. art. 2686, the Naquins did not have to wait until the lease expired to bring their contractual claim. Accordingly, the trial court correctly overruled Bollinger’s exception raising the objection of prematurity.
DECREE
For these reasons, we affirm that portion of the trial court’s judgment, which sustains Bollinger’s exception of prescription and dismisses the tort claims involving the property related to the additional five leases. Because we find no error in the trial court’s denial of the exception of prematurity as to the Naquins’ |ncontractual claims, having converted Bollinger’s appeal to a writ, under our supervisory power, we deny the writ. Appeal costs are assessed equally to the parties.
AFFIRMED; APPEAL CONVERTED TO WRIT, AND WRIT DENIED.
WHIPPLE, J., concurs.
KUHN, J., dissents and assigns reasons.
GAIDRY, J., agrees in part and dissents in part for the reasons assigned by KUHN, J.

. Chain of title supporting the Naquins’ right to bring these claims involving the leases was also admitted but is of no relevancy to the disposition of this appeal.

. The record contains a copy of a letter sent from Bollinger to the Naquins.

. Bollinger's failure to appeal the trial court’s April 11, 2010 ruling granting the exception of prematurity and allowing the Naquins leave to amend precludes review of the propriety of the amendment,